# CHARLESTON

ARNOLD, TRUSTEE v. KNAPP *et als.*

Submitted February 23, 1915. Decided March 16, 1915.

1. BANKRUPTCY—*Trustee—Right of Action—Preferences.*
    Equity has jurisdiction at the suit of a trustee in bankruptcy of
    an insolvent corporation, by virtue of section 40, chapter 53, serial
    section 2873, Code 1913, to recover from a stockholder dividends
    unlawfully declared and paid him, and to recover from officers and
    directors of such corporation money paid them as creditor within
    four months of the adjudication in bankruptcy, in violation of the
    federal bankruptcy act, and to follow the funds so improperly paid
    into any property or rights into which the same have been invested
    and to charge the same therewith. (p. 808).

2. EQUITY—*Bill—Multifariousness—Trustee in Bankruptcy.*
    The bill in this case is not multifarious and bad on demurrer for
    that reason. The objects sought and the rights and interests of the
    defendants impleaded are so interwoven and related as to make them
    all cognizable in one suit. (p. 809).

3. BANKRUPTCY—*Trustee—Recovery of Preferences—Right of Action.*

Independently of any question of substitution or subrogation, equity has jurisdiction in such suit by a trustee in bankruptcy, to follow the money so unlawfully paid officers and directors, and.to charge them therewith and the property into which they may have invested the same, for the benefit of all the creditors. (p. 809).

4. SAME—*Corporations—Preferences by Corporate Officers.*

When a corporation becomes insolvent, or in failing condition, its officers and directors no longer represent the stockholders, but become trustees of the corporate property and assets for the benefit of all the creditors, and cannot then prefer themselves or other creditors out of the money, funds or property of the corporation. And all payments or preferences so made within four months of adjudication in bankruptcy are voidable and recoverable by the trustee in bankruptcy after adjudication on like principles of trusteeship. (p. 811).

5. SAME—*Preference Received by Corporate Officers—Action to Recover —Estoppel.*

A managing officer and director of an insolvent corporation receiving such priority of payment and preference will not be heard to plead ignorance of the insolvency of his corporation existing at the time of such preference, so as to avoid recovery thereof by the trustee in bankruptcy. (p. 814).

6. SAME—*Voidable Preferences—Payment on Notes Executed to Corporate Officers.*

Payments on notes executed to himself by such managing officer and charged to him in his account of money loaned or other obligation of his company, and endorsed by him to a third person, and subsequently paid by him or by his procurement out of the funds of his insolvent company, and within four months of the adjudication, will be treated as payments to him and voidable at the suit of the trustees in bankruptcy against him. (p. 815).

7. SAME—*Voidable Preferences—Salary of Corporate Officers—''Debt of Wage Earner.''*

The salary of such officer and director is not the debt or claim of a wage earner protected by the bankruptcy act. (p. 816).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Randolph County.

Suit by D. H. Hill Arnold, trustee, etc., against G. A. Knapp and others. From decrees for plaintiff, defendants appeal.

*Affirmed.*

*W. B. & E. L. Maxwell,* for appellants.

*Arnold & Arnold* and *Talbott & Hoover,* for appellee.

MILLER, JUDGE:

Plaintiff, as trustee in bankruptcy of the Knapp-Sanderson Company, a corporation, adjudged a bankrupt in January, 1911, of which defendant H. C. Sanderson was president, and defendant O. A. Knapp was secretary-treasurer, filed the present bill, at April rules, 1911, the object of which was, first, to recover from said Knapp the sum of $287.50, dividend on the stock held by him in said company, declared by the board of directors on January 20, 1910, but not paid to Knapp or credited to him on the books of his company until November 16, 1910, such dividend, as alleged, having been made when said company was in fact insolvent and had no surplus out of which to declare a dividend, and made in impairment of its capital stock; second, to recover from said Knapp the sum of $1,065.00, paid by him out of the funds of his said company, by check, November 9, 1910, to the order of one Harding, attorney for William Flint, owner by assignment from R. B. Stalnaker, of the first of three purchase money notes of said Knapp and Sanderson individually, executed to said Stalnaker, and secured by a vendor's lien reserved on a tract of 6 45/100 acres of land in Randolph County, conveyed to them by him, and in payment of said note, and charged to said Knapp on account of the indebtedness of his company to him, as an unlawful preference; and also seeking to be subrogated to the rights of said Stalnaker to the purchase money lien reserved in his deed aforesaid, and to have the land thereby conveyed sold to satisfy said recovery; third, to also recover from said Knapp, for a like unlawful payment or preference to said Knapp, the amount of three several payments to the Davis Trust Company, as follows: November 17, 1910, $200.00, December 27, 1910, $250.00, and December 29, 1910, $300.00, on account of four several notes which on behalf of his company he had executed to himself and endorsed to said trust company, as follows: One of August 19, 1910, at ninety days, for $200.00; two of August 27, 1910, at four months, one for $100.00, and the

other for $150.00; and one of August 29, 1910, at four months, for the sum of $300.00, all alleged to be void for want of authority of said Knapp to execute the same, and all paid to said trust company as aforesaid; fourth, to also recover from said Knapp as unlawful payments or preferences, the sum of $200.00, paid November 15, 1910, and the sum of $375.00, paid December 6, 1910, on account of the alleged indebtedness of said company to him; and the bill also seeks to have all such alleged illegal and preferential payments charged as a lien on said land, but subject to all prior liens and encumbrances thereon, as alleged, and the land sold to satisfy the same.

The bill also alleges, as a basis for the relief sought, that the said Knapp, at the time he caused said payments and preferences to be made knew or had reason to believe that said company was insolvent, and that the payments were so made with intent to prefer and give him an unlawful preference over all other creditors of said company.

Defendant Knapp alone demurred to the bill, assigning as grounds, (1) want of equity therein, (2) full and complete remedy at law, (3) multifariousness, and, (4) that the Davis Trust Company is a necessary party to the bill. And with the exception of defendant J. H. Fout, holder of one of said Stalnaker notes, Knapp alone answered the bill. Of the material issues of fact tendered thereby he controverts the following only: First, that said company had been insolvent for a long time previous to the time it was adjudged a bankrupt. He says that up until the establishment of a branch store at Richwood in September, 1910, managed by him, said company was in fair financial condition; second, that the four notes executed and delivered to him in August, 1910, aggregating $750.00, were then received and accepted by him as cash, and as payments on respondent's loan to his company in January, 1910, of $2,100.00, and that said notes were at the same time charged to him in his account as cash, leaving a balance due him of $1,151.22, and were not payments to him at the date of their maturity and payments thereof to the Davis Trust Company; that of said balance, $706.22, thereof, was arrear of salary and $445.00 thereof was due him on account of the loan he had made said corporation in

January, 1910, of $2,100.00, and on which said loan prior to the execution of said notes in August, 1910, he had received by way of credits, March 5, 1910, $605.00, May 27, 1910, $500.00; that though said notes were paid at maturity, as alleged, in November and December, 1910, it is not true as alleged that respondent then received the money; that having been endorsed by him to the Davis Trust Company, that company, the creditor, received payment, and not himself, and ` he denies that said notes were void for the reason alleged, or for any reason; third, he denies that at the time of said payments to him said company was insolvent, because he says, it had sufficient property which if sold for cash would have paid its debts, and says that at the time of the payments to him he had no idea said company was insolvent, and had no reason to believe the same were intended as preferences over other creditors of said corporation; fourth, respondent denies that the declaration of the dividends in January, 1910, and payment thereof, amounted to an impairment of the capital stock, and, fifth, he says that in so far as said payments were made to him and credited for salary, amounting to $907.50, they did not constitute unlawful payments or preferences, made within four months of the adjudication in bankruptcy.

The first point of error is that appellant Knapp's demurrer to the bill should have been sustained, on the grounds assigned, namely, (1) complete and adequate remedy at law, (2) multifariousness. Want of parties does not seem to be relied on here.

Was there complete and adequate remedy at law, and was equity without jurisdiction to grant the relief prayed for? We think jurisdiction in equity well grounded. The statute, section 40, chapter 53, serial section 2873, Code 1913, gives equity jurisdiction at the suit of creditors, to recover the amount the capital may have been diminished by the distribution and payment of dividends. If creditors may so sue, the trustee in bankruptcy representing them, we think, should also be entitled to go into equity for the same purpose.

Besides, substitution and subrogation sought by the bill are the peculiar subjects of equity cognizance. *Neff* v. *Baker*, 82 Va. 401; *Haffey's Heirs* v. *Birchetts*, 11 Leigh 83; *McNeil* v. *Miller*, 29 W. Va. 480; *Blair* v. *Mounts*, 41 W. Va. 706; *Sim-*

*mons* v. *Lyles,* 32 Grat. 752. These features of the bill distinguish it from *Maxwell* v. *Davis Trust Co.,* 69 W. Va. 276, relied on. That case simply holds there is no jurisdiction in equity at the suit of a trustee in bankruptcy against a creditor to recover preferential payments made in violation of the national act of bankruptcy, with no ground of equitable jurisdiction alleged. If right of substitution or subrogation or other grounds exist in allegation and proof of course equity would have jurisdiction to convene the several lienors and enforce the lien to which plaintiff is entitled to be subrogated.

But is the bill bad for multifariousness? We do not think it is. The statement of its objects and purposes shows that while the claim of plaintiff against Knapp is made up of several demands, some for subrogation, others not, all are recoverable for the creditors of the bankrupt estate, and chargeable against his interest in the land in which the money paid him was invested, and that the interests of all defendants are so involved in the relief sought against him, as to render it improper to proceed in their absence. To render a bill multifarious the different grounds of the suit must be wholly distinct from each other, and each ground stated in the bill must be sufficient in itself as a subject of equity jurisdiction. Hogg's Eq. Proc., sections 136a and 136b. And as said by Mr. Hogg in this connection: ''The objection of multifariousness in a bill may be disregarded except in plain cases, whereby the administration of justice will be furthered and multiplicity of suits avoided.'' *Id.* section 136; *Johnson* v. *Sanger,* 49 W. Va. 405. A good illustration of bills properly regarded multifarious is found in *Turk* v. *Hevener,* 49 W. Va. 204. In the case here there is no such uniting of several and distinct matters distinct in their nature, against several defendants, unconnected in interest and liability, as to properly stamp the bill multifarious, as in *Crickard* v. *Crouch,* 41 W. Va. 503, *Moore* v. *McNutt,* 41 W. Va. 695, *Day* v. *Building & Loan Association,* 53 W. Va. 550, and other cases cited and relied on by appellants. We think those cases inapplicable, and overrule the point.

The next point, and one involving the merits of the case, is that the court erred in subrogating plaintiff to the rights

of William Flint, or his assignor Stalnaker, to the first note paid, and the vendor's lien securing the same. It is contended that the case as presented is wanting in allegation and proof of the essential elements entitling plaintiff to the relief of subrogation. It is argued (1) that to be entitled to subrogation one must have paid the debt due a third party, (2) that in making such payment he must not have done so as a mere volunteer, but on compulsion, and to save himself from loss by reason of a superior lien or claim of the one to whom payment is made. Such is undoubtedly the general law of subrogation. *Aetna Life Ins. Co.* v. *Middleport,* 124 U. S. 534; *Prairie State Bank* v. *United States,* 164 U. S. 227, 231; *McClaskey & Crim* v. *O'Brien,* 16 W. Va. 791; *McNeil* v. *Miller, supra.* It is urged that the plaintiff trustee did not in fact pay the note, voluntarily or involuntarily, that it was paid for account of Knapp and charged to him by the Knapp-Sanderson Company, prior to adjudication in bankruptcy, and while it was still doing business, and that neither before nor since had that company acquired any lien on said real estate entitling it as a subsequent creditor to pay off the prior debt and lien and be subrogated thereto as a means of its own protection.

But this argument based on the general rule of subrogation is not decisive of the case at bar. As was said by the Virginia court in *Simmons* v. *Lyles, supra,* p. 762: "Subrogation is the creature of the chancery courts. It is not founded upon any idea of contract, but upon principles of equity and good conscience. It is a mode which equity adopts to compel the ultimate discharge of a debt by him who in good conscience ought to pay it. Brandt on Suretyship, §260." And upon principles applicable to trustees, it is well settled law that if a trustee diverts trust property or money from its true and proper course, and as required by the law of the trust, the trust fund may be pursued by the beneficiaries, so long as it can be identified, into any land or other form of investment made by the trustee, the law implying and imposing a trust therein in favor of such beneficiaries. *Marshall's Ex'r.* v. *Hall,* 42 W. Va. 641. And such trust money or fund may be followed into purchase money notes and the lien reserved therefor. Pomeroy Eq. Jurisprudence,

(3rd ed.) sections 1048-1049. And this rule applies to directors of corporations. *Id.*, section 1049, p. 2023. And to a trust fund in the hands of a vendee of land, which he has used to discharge a lien thereon, under such circumstances as to render it a fraud on the beneficiaries unless the lien is retained for their benefit. *Oury* v. *Saunders*, 77 Texas 278; *Aiken* v. *Taylor*, (Tenn.) 62 S. W. 200; *Bell* v. *Bell*, 37 L. R. A. (N. S.) 1208, and note.

In this case the evidence tends strongly to show that Knapp had no authority to execute the notes to himself, or to issue checks in payment thereof, or to pay and charge himself on account of his alleged indebtedness. The by-laws of the company in express terms seem to have denied him any such authority. But whether the course of conduct and dealings by him at Richwood, while he had charge of the store there, and transacted the business complained of in this suit, was such as might work an estoppel upon the corporation to deny his authority generally in the premises, we need not say for the purposes of this suit. The law by the great weight of authority seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they then can not by transfer of its property or payment of cash, prefer themselves or other creditors, and that this is so, independently of any of the provisions of the national bankruptcy law. Besides, the policy of our law, by statute, section 2, chapter 74, serial section 3830, Code 1913, for many years, has been to void all preferences of creditors by insolvent individuals or corporations. That the officers and directors of an insolvent corporation are trustees for the creditors is established law by a long line of decisions in this state. *Pyles* v. *Riverside Furniture Co.*, 30 W. Va. 123; *Hope* v. *Salt Co.*, 25 W. Va. 789; *Ruffner Bros.* v. *Welton C. & S. Co.*, 36 W. Va. 244; *Kahle* v. *Oil Co.*, 51 W. Va. 313; *Sweeny* v. *Sugar Refining Co.*, 30 W. Va. 443; *Ravenswood S. & G. Ry. Co.* v. *Woodyard*, 46 W. Va. 558; *Lamb* v. *Laughlin*, 25 W. Va. 300, 322; *Lamb* v. *Pannell*, 28 W. Va. 663, 666.

As the law in this state once was, corporations like individuals might prefer creditors, even director creditors.

*Pyles* v. *Riverside Furniture Co., supra,* pp. 140 to 142. But such is not the present status of the law, certainly not in so far as insolvent corporations are concerned. And by section 52, chapter 53, serial section 2884, Code 1913, no officer or director of a corporation can prefer himself or be present at a meeting of the directors where business is transacted in which he is personally interested, not as a stockholder, without rendering the transaction in his favor prima facie void. *Ravenswood S. & G. Ry. Co.* v. *Woodyard, supra,* 563; *Sweeny* v. *Sugar Refining Co., supra,* 443. Whatever may be the law respecting solvent corporations dealing with its officers and directors, it is now well settled by the great weight of authority, that an insolvent corporation cannot pay or secure a pre-existing debt due a director in preference to debts due others, either by transferring property or cash to him, or by giving him a mortgage on corporate assets. 2 Cook on Corporations, (6th ed.) section 692, and numerous cases cited in note. Our statute, section 2, chapter 74, serial section 3830, Code 1913, would render any such transfer or assignment of property intended as a preference a general assignment for the benefit of all creditors. Payments in cash to creditors, other than officers and directors of corporations, would not be void as a preference under the statute. *Hulings* v. *Hulings Lumber Co.,* 38 W. Va. 351, 369. But sub-sections 60a and 60b, of the federal bankruptcy act, as construed by the Supreme Court of the United States, include payments of money within four months of adjudication in bankruptcy, among preferences voidable under that act, and recoverable by the trustee in bankruptcy. *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438, 442. This federal statute must be reckoned with, therefore, in determining what assets of a bankrupt are to be treated as trust funds or property which may be followed and recovered, and the lien therefor, by subrogation, enforced against the persons and property into whose hands the funds and property have come and been invested. Independently of the federal statute, it is laid down by high authority, that the time when officers and directors lose power to prefer themselves, where that may be lawfully done, or to deal with the corporate assets, except as trustees for the creditors, is not limited to the time when they have declared

the corporation insolvent by a vote to that effect, but whenever the fact of its insolvency comes to their knowledge, and as a result, that a discontinuance of the business operations will likely occur. Jones on Insolvent and Failing Corporations, sections 131 and 132. In the case at bar it is not pretended that there was any action of the board of directors authorizing the execution of the notes, or the payment of the money to Knapp. In *Jessup* v. *Thomason,* 68 N. J. Eq. 443, it is held, that an officer who pays a debt from the corporation to himself within ten days of a receivership must refund. And it is well settled that neither the president nor the treasurer of a corporation has inherent authority by virtue of his office to execute a negotiable note which will bind the corporation. *Bank* v. *Laboringman's Mercantile & Manufacturing Co.,* 56 W. Va. 446. So far then as payments were made to appellant Knapp in cash, or for his account, and charged to him, out of the money belonging to the bankrupt, they must be regarded as preferences to him, if his company was insolvent, and voidable preferences under the federal statute, if he knew or had reasonable cause to believe a preference was intended, for all were made within four months of the adjudication in bankruptcy.

But appellant insists that at the time of said payments he did not know, and had no reasonable ground to believe, that his company was insolvent; and he contends that there is in fact no proof of actual insolvency at that time. That said company was then insolvent, within the meaning of the bankruptcy act, we think is clearly shown by the evidence of the inventory after bankruptcy, made a short time after these payments, showing that the assets were many thousand dollars less than the creditor liabilities, to say nothing of stock liability; and that when subsequently sold and purchased by Knapp and Sanderson from the trustee in bankruptcy, they brought $15,000.00, a sum sufficient to pay only about fifty per cent. on the total indebtedness. And we find in the record, evidence of the fact that before the adjudication of bankruptcy, and before some of the payments were made to Knapp, that a proposition was made by the corporation through them to settle with the creditors on the basis of fifty per cent. of the indebtedness. Insolvency does not

depend, as appellants assume, on whether the assets if sold at cost price would pay the debts. A person or corporation is insolvent within the meaning of the bankruptcy act, "Whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Collier on Bankruptcy, (10th ed. 1914), page 2. The statute says "fair valuation". This has been interpreted to mean present market value, and the value which the debtor might realize thereon if permitted to continue in business. But in considering the actual value of commercial paper, accounts, etc., the actual value, not the face of the accounts, must be taken as the true value. The evidence tends to show that in January, 1910, taking the property and stock and fixtures at cost, and the book accounts at face value, and not at their actual value, and after payment of the dividend declared, a small balance to the credit of profit and loss remained. But the evidence clearly shows that these assets, particularly the fixtures and book accounts, against which nothing had ever been charged for depreciation, were many thousand dollars less in value than represented on the books, and the business was evidently a losing business during the following year, as evidenced by the inventory taken, and the result of the sale thereof; and the fact that insolvency, denied in this proceeding, was not interposed as a defense to the adjudication in bankruptcy, we think, taken together, fairly establishes insolvency at the time of the alleged preferences. Collier on Bankruptcy, supra, page 10.

But did Knapp know or have reason to believe a preference was intended? He was secretary-treasurer of the company. He and his associate, Sanderson, were the main stockholders, and controlled the company, and if anyone should have had knowledge of the condition of the company, and was inexcusable for not having such knowledge, it was the secretary-treasurer of the corporation. In *Whitehead* v. *Whitehead,* 85 Va. 870, 876, it was held that such an officer cannot be heard to plead ignorance of the financial condition of his corporation. And our cases of *Lamb* v. *Cecil,* 28

W. Va. 653, and *Lamb* v. *Pannell, Id.* 663, in effect, lay down
the same rule.

Another point made by appellants against the decree is,
that as to the notes executed by Knapp and charged to his
account in August, 1910, and held by the Davis Trust Com-
pany, he was simply endorser, and not creditor of the bank-
rupt, and that the payment of those notes at maturity in
November and December, 1910, within four months of the
adjudication of bankruptcy, did not amount to a payment
and preference to him, voidable by the trustee in bankruptcy.
But we find no authority for this proposition. *In re George
M. Hill Co.,* 130 Fed. Rep. 315, 318, and *Pirie* v. *Chicago Title
and Trust Co.,* cited, we do not think in point. The Hill Case
would make the trust company creditor, and liable to account
to the trustee, if with knowledge or reason to believe pay-
ment was made to it as a voidable preference. There is no
evidence imputing knowledge to the trust company.

But there is another rule applicable to appellant as
endorser of the notes, and the active agent in making pay-
ments to the trust company. By the weight of authority,
when such is the fact, and a director is endorser, payment of
the note by his procurement and to his relief, constitutes an
unlawful preference to him, recoverable from him by the
trustee in bankruptcy. 2 Cook on Corporations, section 693,
and notes; *Savage* v. *Miller,* 56 N. J. Eq. 432; *Miller* v.
*Audenried,* 67 N. J. Eq. 252; Collier on Bankruptcy, (10th
ed.) 813. It might be, upon the principles of *Kenyon Realty
Co.* v. *National Deposit Bank,* (Ky.) 31 L. R. A. (N. S.) 169,
that the trust company, taking the note of the bankrupt in
payment of the individual indebtedness of a director, or dis-
counting the paper for him individually, would not be pro-
tected as an innocent holder for value. But that question is
not presented, but if presented, that would not excuse the
offending director, endorser of the paper. It is said in
Collier on Bankruptcy, just cited, that: ''If an endorser
permits or induces payment of a note, with knowledge or
reasonable cause to believe that such payment will result in
a preference, he receives the benefit of the payment and he is
a creditor.'' Another rule is that: ''The payment by the
maker of a note to the holder in exoneration of an accommoda-

tion indorser, within four months of bankruptcy, is a preference to the indorser which may be recovered by the trustee under §60, subdivision a and b, of the bankruptcy act.'' *Platt* v. *Ives,* (Conn.) 45 L. R. A. (N. S.) 1068. For the same doctrine see *Kobusch* v. *Hand,* 84 C. C. A. 372, 18 L. R. A. (N. S.) 660 and note. In the latter case the Supreme Court of the United States in April, 1908, refused a writ of certiorari. 209 U. S. 547, 52 L. ed. 920.

And in reply to the contention of appellant Knapp that he took the notes as cash, and in payment, and charged himself therewith in August, it may be said that the giving of a note generally is not payment of a debt. *Hornbrooks* v. *Lucas,* 24 W. Va. 493; *Bank* v. *Good,* 21 W. Va. 455, 464; *Lewis* v. *Davisson's Ex'or.,* 29 Grat. 216, 225; 2 Daniel on Neg. Inst., (6th ed.) section 1260. And it is urged by appellee, that in this case none of the notes were authorized or executed in accordance with the by-laws governing such transactions.

Another point of contention by appellant Knapp is that as to the salary part of his account, paid, the payments thereon were not preferences voidable in bankruptcy. The answer to this proposition, according to the authorities, is that the salary of an officer or manager of a corporation is not the debt or claim of a wage earner, protected by the statute. Collier on Bankruptcy, 906. A debt due from a corporation to an officer on account of salary stands on the same basis as any other debt to such director. 2 Cook on Corporations, (6th ed.) section 692, page 2126, and note.

The necessary conclusion from the foregoing is, that the two decrees appealed from of March 5th, and May 29th, 1913, respectively, must be affirmed, and we will so order.

*Affirmed.*