## In re LAMIE CHEMICAL CO.

## TWENTIETH ST. BANK et al. v. SHARITZ.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2146.

1. **Corporations ⬅545(2)—Where corporation may secure officers and directors from loss arising from advances and indorsements, stated.**

A going, solvent corporation, in certain circumstances and in the absence of a statute to the contrary, may secure its officers and directors from loss, where it is believed in good faith that by so doing the corporation can escape financial disaster, and where solely with that end in view they made advances and indorsements on its account, but as respects transactions intended for their own benefit the utmost good faith must exist, as officers should not, as against those who have the right to rely on them for, protection, be permitted to secure advantage or gain by questionable methods.

2. **Corporations ⬅542(3)—Officers and directors of insolvent corporation cannot secure themselves by conveyances for their benefit.**

In West Virginia, officers and directors of an insolvent corporation can no longer secure themselves as against creditors of the company by making conveyances of its property for their benefit.

3. **Corporations ⬅545(3)—Failure of recordation and other circumstances with intent to expand credit sufficient to avoid mortgage to officers.**

Failure of recordation done with intent to expand the credit of a corporation, together with other circumstances, *held* to render mortgages and trust deeds executed to protect officers making advances invalid, as tending to hinder, delay, and defraud creditors, even assuming the corporation to be solvent at time of execution of mortgages.

4. **Corporations ⬅545(2)—Officers and directors trustees for creditors on insolvency, and can not prefer themselves.**

When a corporation becomes insolvent or in failing condition, the officers and directors not only represent the stockholders, but by the fact of insolvency become trustees for the creditors, and they cannot by a transfer of its property or payment of cash prefer themselves or other creditors, independent of the Bankruptcy Act (Comp. St. §§ 9585–9656).

5. **Bankruptcy ⬅185—Trustee authorized to recover property transferred in violation of state statute.**

Under Bankruptcy Act, § 67e (Comp. St. § 9651), the trustee is authorized to recover property transferred in violation of statute, and the right of action under this section is not subject to the four-months limitation prescribed in section 60b (Comp. St. § 9644).

6. **Bankruptcy ⬅184(2)—Mortgages and trust deeds of corporation held invalid.**

Mortgages and trust deeds executed by a West Virginia corporation to its officers to protect them for advances *held*, in view of the fact that they were not recorded until after insolvency and other circumstances, to be void under Barnes' Code W. Va. c. 74, § 1, and Bankruptcy Act, § 70e (Comp. St. § 9654), and they could be avoided by the trustee in bankruptcy under section 67e (Comp. St. § 9651).

Appeal from the District Court of the United States for the Southern District of West Virginia, at Huntington, in Bankruptcy; George W. McClintic, Judge.

In the matter of the estate of the Lamie Chemical Company, bankrupt; B. C. Sharitz, trustee. From a decree disallowing preferred debts, and setting aside and annulling deeds of trust, the Twentieth Street Bank and others appeal. Affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. N. Davis and W. K. Cowden, both of Huntington, W. Va. (Henry Simms, F. M. Livezey, Livezey & McNeer, Simms & Staker, and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for appellants.

Philip P. Gibson, of Huntington, W. Va. (George S. Wallace, of Huntington, W. Va., on the brief), for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from a decree of the United States District Court for the Southern District of West Virginia, at Huntington, entered on the 28th day of March, 1923, in the involuntary bankruptcy proceedings pending therein of the Lamie Chemical Company, a corporation, in which the court disallowed as preferred debts against the bankrupt's estate, the following:

| | |
|---|---|
| Twentieth Street Bank, a corporation | $44,197.51 |
| First National Bank of Huntington, W. Va. | 45,842.52 |
| Chase National Bank of New York | 12,714.78 |
| N. B. Chemical Co., a corporation | 7,242.45 |

—and set aside and annulled two certain deeds of trust or mortgages executed by the Lamie Chemical Company on the 3d of January, 1921, to Ralph D. Lamie and others, officers and directors of the bankrupt company, and which conveyances covered all of the property of the corporation, real and personal generally, to secure them as indorsers on certain obligations of the company; one including particularly the property in New York, and the other that at Huntington, W. Va. The petitioners, as the basis for their preferred claims, set up an alleged lien in favor of certain of the beneficiaries under the trust deeds, indorsers of the company's notes, to wit, John Garvin and R. D. Lamie, to whose rights they claim to be subrogated.

In order to arrive at the correctness of the decision appealed from, and the validity of the two deeds of trust or mortgages vacated and annulled thereby, it will be necessary to review the history, including the organization, management, and operation of the bankrupt company, as throwing light upon the transactions in question. The Lamie Chemical Company was chartered and organized under the laws of the state of West Virginia on October 22, 1917, with a capital of $50,000, to manufacture dye stuffs; its chief place of business being at Huntington, W. Va., and it also having an office in New York City. The capital stock was subsequently increased to $750,000, $250,000 preferred and $500,000 common. Of the first subscription to the stock of $50,000 only $24,000 was paid in cash; the president, R. D. Lamie, putting in certain formulas, contracts, etc., owned by him in another similar company, at the price of $26,000. The increased capital stock from $50,000 to $750,000 was paid for by stock dividends issued upon the basis of profits or supposed profits made by the bankrupt, and it is admitted that $104,100 of the preferred stock was paid for in cash.

The corporation was a close one, in that the entire common stock, which was the voting power of the company, was held by some 12 persons—4,180 out of 5,000 shares being owned and controlled by four officers of the company, R. D. Lamie president, W. T. Tripp secretary

and treasurer, John Garvin vice president, and L. E. Garvin statutory attorney—and between certain officers of the company a close family relationship existed.

The business of the company was fairly prosperous from the beginning, and especially during the years 1918, 1919, and until late in the spring of 1920, when it began rapidly to fall off, largely from the fact of its inability to sell the product of the company, and the cancellation of its most valuable foreign orders, including contracts of sale to customers in Japan approximating half a million dollars. By the month of December, 1920, the liabilities of the company had increased to more than a quarter of a million of dollars. Of this indebtedness, $114,000 consisted of notes indorsed by Ralph D. Lamie and John Garvin, president and vice president of the company, $86,000 of notes given for trade acceptances without indorsement, $14,961.41 due by open account, and $16,250 secured by trust deed on its New York property. The company was thus, as early as December, 1920, running its business by borrowing money on its notes, indorsed by its president and vice president, and using trade acceptances.

In this condition, a meeting of stockholders of the company was called in the city of Chicago, at the Congress Hotel. The by-laws of the company require that its annual meetings be held at the principal office of the company at Huntington, or at the office of Ball & Garvin, at Marquette, Mich.; one meeting of stockholders having been held at the last-named city, but all the others, save the Chicago meeting, at Huntington, W. Va. At the meeting in Chicago on the 14th of December, 1920, it was, among other things, resolved that the company should execute and deliver a trust deed or mortgage to cover all the assets of the corporation, or so much thereof as might be necessary to secure certain stockholders and directors of the company on account of indorsements theretofore made by them, or that they might thereafter make for the company, with a view of assisting it in its then financial difficulty, and to that end the president, secretary and treasurer were directed to execute and deliver such deed or mortgage to the parties named therein, as grantees or mortgagees.

Pursuant to this resolution, the mortgages or trust deeds vacated and annulled as aforesaid, the subject of this appeal, to Ralph D. Lamie, John Garvin, A. T. Roberts, and Thornton A. Green, constituting the president and vice president of the company, and four of its directors, together with one R. Seldon Rose, were, on the 3d day of January, 1921, duly executed; one covering the plant and real estate and personal property at the home office at Huntington, and the other the real estate and personal property of the company at New York, the mortgage reciting as follows:

"This grant is intended as a security for the payment of the sum of seven thousand five hundred dollars ($7,500), together with all interest thereon, on demand and also to secure each one of the above-named parties of the second part against any loss which they or either of them may sustain by virtue of the fact that they or either of them have indorsed or may hereafter indorse promissory notes of said party of the first part, and to secure to said parties of the second part, or either of them, the prompt payment of any note or notes which they may now hold of the said party of the first part, or any note or notes which said party of the first part may hereafter give them

or any of them, or of any part thereof, or of any interest which may become due upon any of the aforesaid notes."

These mortgages were not recorded, but held in the company's office at Huntington, and nothing was said or known of their execution, except to the parties participating therein, save and until they were nearly a year later placed by the president and vice president of the company on record, to wit, the West Virginia mortgage recorded in the clerk's office of Cabell county, W. Va., on the 6th of October, 1921, and the New York mortgage in the office of the register of deeds of the county of New York on the 19th of November, 1921.

Two days prior to the filing of the last-mentioned mortgage, and subsequent to the recordation of the deed to the West Virginia property, Ralph D. Lamie and John Garvin, as plaintiffs, instituted suit in equity in the circuit court of Cabell county, W. Va., against the bankrupt company, alleging among other things that the company was wholly insolvent, and praying for and secured the appointment of a receiver to wind up its affairs. On the 6th of February, 1922, the involuntary petition in this cause was filed in the United States District Court for the Southern District of West Virginia at Huntington, and on the 1st day of March following the company was duly declared and adjudged bankrupt.

Though the mortgages recite a present consideration of $7,500, no such amount was ever paid, and it appears from the testimony that the then purpose of the directors was to raise among them $20,000, with a view of financing the company temporarily, which, however, was not done, save that some time thereafter the president of the company did secure for the benefit of the company on his note $5,000. It also appears from the testimony that the indebtedness then due by the company upon notes indorsed by its president and vice president Lamie and Garvin, and to whose rights under the trust deed aforesaid the appellants ask to be subrogated, were all for past due obligations of the company, whose notes had been indorsed by them and several times renewed, the original transactions in some instances going back to the year 1919, and further that no present consideration passed for the execution of the deeds of trust in question.

Appellants in their assignments of error maintain the validity of these deeds—the substance of their six assignments being that the mortgages were executed and delivered under proper corporate authority; that there was no fraud nor improper conduct in connection with their execution and delivery; that no creditor extended or gave credit to the bankrupt after the execution of said deeds of trust or mortgages; that a solvent going concern had the right, in the absence of fraud, to prefer one creditor over another; that the mortgages or deeds of trust constituted valid and subsisting liens against the bankrupt's property; and that appellants were entitled as beneficiaries under said deeds of trust or mortgages to the securities thereby created. These assignments briefly present for the consideration of the court whether the deeds of trust or mortgages constitute valid and existing liens in the light of the circumstances under which they were executed, the character of the property conveyed, and what was had and done by the beneficiaries in connec-

tion therewith; incidentally, whether the company was solvent or insolvent, whether it was entitled to make such conveyances of its property, and whether the same were not in fact void and fraudulent, and executed with intent to hinder, delay, and defraud its creditors, or at least would not so operate.

[1] While it may be conceded that a going solvent corporation in certain circumstances, and in the absence of a statute to the contrary, may secure its officers and directors from loss arising from advances made to and indorsements on account of the corporation, where it is believed in good faith that by so doing the corporation can escape financial disaster, and where solely with that end in view they made advances and indorsements on its account, their action may be valid, and should be sanctioned. But as respects transactions intended for their own protection, the utmost good faith must exist, as officers of a corporation should not, as against those who have the right to rely on them for protection, and who are in a less favored position of knowledge of the company's affairs, be permitted to secure advantage or gain by questionable methods, and hence their action should be free from every reasonable ground of suspicion.

[2] It is now the settled law of West Virginia, as determined by the Supreme Court of Appeals of that state in the recent case of Arnold v. Knapp, 75 W. Va. 804, 811, 812, 84 S. E. 895, that officers and directors of an insolvent corporation can no longer secure themselves as against creditors of the company, by making conveyances of its property for their benefit.

[3] Waiving for a moment the question of insolvency, and considering the transaction from the viewpoint of the secured officers, the action of officers and directors in such circumstances as here must be for the sole object of continuing a business which promises to be successful, and they must do nothing to bolster up the credit of the corporation, or which tends so to do by showing false and fictitious assets. In this connection, the withholding from record of the mortgages upon the company's property, under which security is claimed, is a strong circumstance from which the bona fides of the transaction may be questioned, as by so doing the credit of the company was necessarily inflated, and opportunity afforded to mislead and deceive creditors of the company, or persons with whom business was being done. The authorities strongly support the position that the failure of recordation, done with intent to expand the credit of the corporation, is of itself sufficient to avoid the mortgage. National Bank of Athens v. Shackleford, 239 U. S. 81, 36 Sup. Ct. 17, 60 L. Ed. 158; Fourth National Bank v. Willingham, 213 Fed. 219, 129 C. C. A. 563; In re National Boat & Engine Co. (D. C.) 216 Fed. 208, 214.

This transaction will be reviewed in the light of the circumstances surrounding the execution of the mortgages, the fact that they embraced all of the company's assets, and that the company was allowed to remain in possession and control of such assets, and to use the same as if no mortgages had been made, and the effect of holding the mortgages from record, as affecting the solvency of the company. In doing this, sight should not be lost of the relation that the two indorsers who were secured by the mortgages, occupied to the company, viz. that they

were respectively the president and vice president of the company, that the two owned 3,000 of the 5,000 shares of the company's voting stock, and that the statutory attorney owned 625 shares, and that, of the six directors of the company, four were secured under the mortgages assailed.

It is earnestly claimed by those secured that at the time of the execution of the mortgages on the 3d of January, 1921, the company was solvent, though it is admitted that it had become insolvent by October of that year, when the mortgages were for the first time recorded on the 1st of October, and a state receiver was appointed thereunder on the 17th of November following. The court is not prepared to admit the solvency of the company at the time of the execution of the mortgages, and certainly it will be conceded that the company was in a precarious condition financially at the time. It had done a large business during the flush times of the World War, and shortly following it; but a premonition that these conditions could not last had become painfully apparent in the early summer of 1920, and even during the latter part of that year, as compared with the early part of the year, when sales had immensely fallen off; some of the larger foreign contracts having been canceled. The company owed large sums of borrowed money, and the $114,000 for which the very notes attempted to be enforced herein were given had been contracted theretofore, much of it as early as the year 1919, and had been renewed from time to time.

The reason given for executing the mortgages was because of the lack of ready money, and the hope of borrowing $20,000 with which to tide over the then financial difficulties of the company; the claim being that the mortgages were mere temporary expedients to that end. The value of the property upon which the solvency of the company was claimed consisted largely of raw and manufactured material on hand, from which large sales were anticipated, and from that source, with the $20,000 to be borrowed, and the sale of treasury stock upon which it was believed considerable money could be secured, it was hoped that the company's business would be placed upon a firm financial basis, but those expectations were not realized. The $20,000 was not raised, nor was there any present consideration paid for the mortgage upon its execution, though it seems that $5,000 some time thereafter was borrowed by the president of the company on his own note, which note has neither been paid by the company nor its maker. It was soon found, as might have been expected, that the stock could not be sold, and the chief source from which income was received by the company was from the sale of its product on hand at greatly reduced prices, as there was virtually no market therefor. This effort to dispose of the product on hand, and to realize from the sales of stock, constituted largely the business of the company after the execution of the mortgages, until it was placed in the hands of a receiver at its own request.

Certainly the hope and belief in the solvency of the company proved wholly delusive, so far as the company was concerned, and the court can but believe that, as between those in the positions of president and vice president of the company and other creditors of the bankrupt, the test of the solvency of the company should be as of the date of the recordation of the deeds, as distinguished from the date of making of

the same, though the court entertains no serious doubt that the insolvency actually existed at the time of the execution of the mortgages. Fletcher, Cyclo. Corporations, vol. 8, § 2152, aptly states this question as follows:

"In the case of a mortgage withheld from record, it has been held that it is immaterial that the company was solvent at the date of such mortgage, as the question is what was the condition when the directors put the mortgage on record, and attempted to shelter themselves under it as against other creditors."

The conduct of the officers and directors of the company, beneficiaries under these mortgages, in connection with the handling of the company's property, and the suppression of the existence of the mortgages, tends strongly to establish the invalidity of the same. The mortgages were authorized at a meeting of the stockholders in Chicago on the 14th of December, 1920. The actual execution of the deeds was on the 3d of January, 1921. The audit and statements of the company's affairs gave no intimation of the proposed mortgages, or that the same were contemplated. On the 17th of January, 1921, the vice president of the company gave to the well-known commercial agency of R. G. Dun & Co. a statement of the company's financial standing, showing that the company had no bonded indebtedness; that none of its accounts had been pledged in any manner, and there were no liens against its property, save for $16,250 on the New York branch; and that the amount of capital stock paid in cash was $104,100. Subsequently, on the 23d of September, 1921, the president of the company, R. D. Lamie, in the effort to make sales of its stock, issued a most flattering statement of the affairs of the company, as well from the past as the then standpoint, stating that the proceeds of sale of the stock was to be used directly in the business to increase the working capital; also giving the business of the company, the unusual dividends it had paid, the large sales made during the past three years, but said nothing whatever concerning these deeds of trust, or any incumbrance upon the property.

Viewing these transactions in the light of the circumstances mentioned, the fact that the entire property of the corporation was conveyed, and the same allowed to remain in the hands of the company and to be used in its business, coupled with the act of withholding the deeds of trust from record, and the failure to give any information concerning the existence of the mortgages until the company had become hopelessly insolvent, and it was necessary so to do in order to protect themselves, convinces us that the transaction was invalid, and should be so held; that, taking into account the fact that the officers of the company and owners of the majority of the stock are also the beneficiaries sought to be preferred, the fraudulent character of the mortgages becomes manifest, as matter of law, if not in fact, and that the same necessarily tend to hinder, delay and defraud the company's creditors, and should be vacated and annulled.

[4] The law by the great weight of authority seems to be settled that when a corporation becomes insolvent or in failing condition, the officers and directors represent not only the stockholders, but by the fact of insolvency become trustees for the creditors, and they cannot by a transfer of its property or payment of cash prefer themselves or other

creditors. This is independent of any provision of the National Bankruptcy Act (Comp. St. 9585–9656). Arnold v. Knapp, 75 W. Va. 804, 811, 84 S. E. 895, supra; Sweeny v. Sugar Refining Co., 30 W. Va 443, 4 S. E. 431, 8 Am. St. Rep. 88; Hope v. Valley City Salt Co., 25 W. Va. 789; National Bank of Athens v. Shackleford, Tr., 239 U. S. 82, 36 Sup. Ct. 17, 60 L. Ed. 158; Blennerhasset v. Sherman, 105 U. S. 100, 117, 121, 122, 26 L. Ed. 1080; Rogers v. Page, 140 Fed. 596, 72 C. C. A. 164; In re Duggan, 183 Fed. 405, 106 C. C. A. 51; Orr v. Park, 183 Fed. 683, 106 C. C. A. 33 (5th C. C. A.); McAtee v. Shade, 185 Fed. 442, 107 C. C. A. 512 (8th C. C. A.); Nat. Bank of Athens v. Shackelford, 208 Fed. 677, 125 C. C. A. 575; Fourth National Bank of Macon, Ga., v. Willingham, 213 Fed. 219, 129 C. C. A. 563 (5th C. C. A.); In re National Boat & Engine Co. (D. C.) 216 Fed. 209, 215; In re Peterson, 235 Fed. 878, 149 C. C. A. 190, Ann. Cas. 1918A, 1052 (9th C. C. A.).

"Where the directors of a corporation transferred to themselves, prior to the four months period, assets of the corporation in payment of antecedent debts, such a transaction is invalid under general principles independent of the Bankrupt Act, and may be recovered by the trustee." Collier on Bankruptcy (13th Ed.) p. 1317.

"Where an assignment of accounts due a corporation is made by a corporation to its president to secure money previously advanced by him to the corporation, he knowing at the time that the corporation was in a precarious condition, there is an absence of good faith which will render the assignment ineffectual as a lien." Collier on Bankr. supra, p. 1533.

See In re Richards, 28 Am. Bankr. Rep. 636; Burnes v. Burnes, 137 Fed. 781, 70 C. C. A. 357 (8th C. C. A.); Fletcher, Cycl. Corporations, vol. 8, § 5152; Collier on Bankruptcy, supra (13th Ed.) § 1522; Remington on Bankruptcy (3d Ed.) § 1529; Black on Bankruptcy (3d Ed.) § 451, pp. 949–951.

Having considered the validity of the two mortgages independently of the Bankruptcy Act, we will consider their status under the Bankruptcy Act and the statute of West Virginia applicable thereto. Section 70e of the Bankruptcy Law (Comp. St. § 9654) reads as follows:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Section 1 of chapter 74, Barnes' West Virginia Code, is as follows:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing, given with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser ·for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

[5] Under section 67e of the Bankruptcy Law (Comp. St. § 9651), a trustee is authorized to recover property transferred in violation of the state statute, and the right of action under this section is not subject to the four months' limitation prescribed in section 60b of the Bankruptcy Act (Comp. St. § 9644), or section 67e; Stellwagen v. Clum, 245 U. S. 605, 38 Sup. Ct. 215, 62 L. Ed. 507; Black on Bankruptcy, § 458, p. 969.

[6] But little need be said regarding the invalidity of the transaction in question under the two sections of the federal and state statutes mentioned, when read in connection with each other. The state statute in plain terms makes the giving of such a lien with the intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, their representatives or assigns, void. Section 70e of the Bankruptcy Act in equally plain terms provides for the bankrupt's trustee avoiding such transfer, and hence under these statutes the mortgages in question are void, and of no legal force and effect as valid securities. National Bank v. Shackelford, 239 U. S. 81, 36 Sup. Ct. 17, 60 L. Ed. 158, supra; Blennerhasset v. Sherman, 105 U. S. 117, 120, 122, 26 L. Ed. 1080, supra; Morgan v. National Bank of Mannington, 145 Fed. 466, 76 C. C. A. 236 (4th C. C. A.); City Bank v. Bruce, 109 Fed. 69, 48 C. C. A. 236 (4th C. C. A.); In re Salvator Brewing Co. (D. C.) 183 Fed. 910; McAtee v. Shade, 185 Fed. 443, 107 C. C. A. 512; National Bank of Athens v. Shackelford, 208 Fed. 677, 125 C. C. A. 575; In re National Boat & Engine Co. (D. C.) 216 Fed. supra, 208, 214. Fletcher's Cycl. Corporations, vol. 8, § 5148.

Counsel for appellants present quite an array of authority, and earnestly and ably insist that the mortgages in question are valid. Their position, and these authorities, have been given careful consideration, and the conclusion we have reached is that under the facts as we find them the authorities cited do not materially militate against the views herein expressed.

The decision of the District Court will be affirmed, with costs.

Affirmed.