**LILLY v. ERNST et al.**

No. 344.

United States District Court
S. D. West Virginia, Bluefield Division.
Oct. 10, 1952.

---

Arthur F. Kingdom, Bluefield, W. Va., for plaintiff.

Horace S. Meldahl, Charleston, W. Va., Paul S. Hudgins, Bluefield, W. Va., for defendants.

MOORE, Chief Judge.

In the year 1946 Frank H. Ernst, who had theretofore been individually conducting a bakery business, employed the firm of George S. May Company, a concern en-

gaged in business counseling, to advise him as to the future conduct of his business. On the advice of this consultant two corporations were formed, one of which, the Ernst Equipment Company, was to own the bakery equipment, and the other, Frank's Bakery, Inc., was to operate the bakery business. Ernst and the members of his immediate family were made stockholders and directors of both companies. As consideration for the transfer to it by Ernst of his stock of ingredients, supplies, materials and merchandise, Frank's Bakery executed $18,000 in notes, payable to Frank H. Ernst in twenty years after date, secured by a vendor's lien, but with the proviso that any part or all thereof might be called at any time. Ernst Equipment Company issued notes to Frank H. Ernst, likewise secured by a vendor's lien, in approximately the same amount, as a consideration for the transfer to it of the bakery equipment then owned by him. The ingredients, supplies, materials and merchandise transferred to Frank's Bakery and the equipment transferred to Ernst Equipment Company were at the time worth at least as much as the amount of the notes received by F,rank H. Ernst. The arrangement between the two companies was that Frank's Bakery was to pay Ernst Equipment Company $6,600 per year for the use of the equipment, plus a share in the profits of Frank's Bakery, if profits were made. Ernst was employed by Frank's Bakery at a salary of $4,100 per year. He also received a salary from Ernst Equipment Company, the amount of which does not appear in evidence.

In a nine month period prior to the incorporations, the business made a net profit of $23,402.88. During the first year following its incorporation the gross volume of business done by Frank's Bakery was $233,-169.96. For the next succeeding three years the figures were respectively $325,137.93, $283,421.18 and $240,981.56. The profits were not commensurate with the volume of business. This was due mainly to the fact that whereas other bakeries in the same locality produced bread, and dealt in cakes merely as a side line, Frank's Bakery dealt entirely in cakes. The rising cost of materials, together with the sharp competition between bakeries led to a situation whereby if Frank's Bakery were to continue in the competitive business of producing cakes, it must do so at prices so low that there was little if any profit in its business; whereas, those bakeries which produced cakes only as a side line were able to offset the loss of profit on cakes with the profit realized on the sale of bread.

For the year ending September 30, 1947, Frank's Bakery's net profit, after sharing with Ernst Equipment Company, according to their agreement, was $1,199.30. For the year ending September 30, 1948, it was $938.86. For the year ending September 30, 1949, it sustained a loss of $4,613.05; and for the year ending September 30, 1950, it sustained a loss of $11,237.66.

Beginning almost from the date of the incorporation of Frank's Bakery, Ernst issued checks of that corporation in payment of his personal indebtedness, the amounts of which checks were duly charged to his account on the books of Frank's Bakery. These charges were later offset by entries of various credits marked "transfers from note account." There appear on the books credits in the amount of $20,000 which are so listed. Ernst accounts for $2,000 of this amount by his testimony that he guaranteed and afterwards paid to Mutual Insurance Company an account or note of $2,000, which was an obligation of Frank's Bakery. The remaining $18,000 is accounted for by various resolutions appearing on the minutes whereby the directors authorized certain portions of the outstanding notes to be called and paid, the last entry being on December 17, 1948.

The foregoing represents the situation revealed by the evidence with reference to part of plaintiff's claim. As to the remainder, the evidence is not altogether clear, but as nearly as the court can determine, the facts are these:

Ernst Equipment Company owed Frank H. Ernst on promissory notes given for the equipment approximately the same amount originally owed him by Frank's Bakery. The type of notes was the same; i. e., they were twenty year notes, but callable at any time. The sole source of income of Ernst Equipment Company was the rentals paid

for the use of the equipment by Frank's Bakery. This income was used up in the purchase of additional equipment, payment of salaries, and in sundry other ways. After the entire amount owed by Frank's Bakery to Frank H. Ernst had been used to liquidate his account, Ernst continued to issue checks of Frank's Bakery for items of personal indebtedness, and continued to charge these checks to his personal account on the books of Frank's Bakery. He conceived the idea (which was not at any time officially ratified by the directors of Frank's Bakery) that he would liquidate the charges to himself on the books of Frank's Bakery by applying as an offset to these charges the money, or part thereof, which was due to him from Ernst Equipment Company on his notes and salary. This was accomplished by means of various entries made on the books of Frank's Bakery and Ernst Equipment Company, whereby on the books of Frank's Bakery, Ernst Equipment Company was charged with certain amounts and Frank H. Ernst credited therewith; and on the books of Ernst Equipment Company Frank's Bakery was credited with these same amounts and Frank H. Ernst was charged therewith. These transactions began in February, 1949, and extended until February, 1951.

Frank's Bakery was adjudicated a bankrupt on May 7, 1951. There was shown on the books as of that date a balance due Frank's Bakery from Ernst Equipment Company in the sum of $22,285.35. This balance was the result of an account which ran between the two companies from the beginning of their corporate existence clear through to the bankruptcy. It included the rentals charged for the equipment, various sums of money advanced by Frank's Bakery to pay Ernst Equipment Company's indebtedness, some of which was repaid by Ernst Equipment Company; and the total sum of $15,098.53, which last figure represents merely the shifting of book entries in the matter of Frank H. Ernst's personal accounts with the two companies.

The books of Frank's Bakery were turned over to the Trustee and Frank H. Ernst was examined before the Referee in the bankruptcy proceeding. It was not revealed in his examination that $15,098.53 of the Ernst Equipment Company account was in fact his personal indebtedness, which had merely been shifted from himself to the equipment company. Negotiations were carried forward between the Trustee in Bankruptcy and Ernst Equipment Company (participated in by Frank H. Ernst and his family), as a result of which the Trustee took possession of all the equipment of Ernst Equipment Company, except some specific motor vehicles which were allocated to Frank H. Ernst and Harold K. Ernst, sold this equipment at public sale, paid off a lien for money borrowed from a bank and realized net proceeds of approximately $5,400. This compromise was ratified by an order entered in the bankruptcy case by the Referee.

Defendants filed a motion to dismiss on the ground that they had not consented that they be sued in the Federal Court on plaintiff's claim, and that since plaintiff's claim did not come within any of the exceptions of the applicable statute, 11 U.S.C.A. § 46(b), this court is therefore without jurisdiction to entertain the action. At a hearing on this motion held in Beckley on the 25th day of July, 1952, the court, after hearing argument of counsel, tentatively overruled the motion to dismiss, but announced at the time that if the evidence should indicate the propriety of so doing, the court would reconsider action on this motion.

After hearing all the evidence, I am of the opinion that my ruling on the motion to dismiss was correct.

As to that part of the plaintiff's claim which is based on the payment of $18,000 to liquidate corporate notes held by Ernst, and the payment of $2,000 to Ernst to reimburse him for money paid to Mutual Insurance Company, it is clear that both these payments were acts of the corporation. The directors authorized the payments which were made on the notes. The general authority given the president to manage the business is sufficient to cover the $2,000 payment. The only possible basis of any attack upon these payments would be that they were preferences, which, if effected at a time when the corporation was insolvent and attacked within the statutory

period of limitation, would be avoided. Neither was the case here. The evidence does not indicate any fraudulent aspect in these transactions. The notes were bona fide obligations of Frank's Bakery, secured by a lien on the assets which gave rise to them. The evidence does not show that Frank's Bakery was insolvent at the time the payments were made. Consequently, this portion of plaintiff's claim must be dismissed upon the merits.

As to the $15,098.53 of Ernst's personal indebtedness to Frank's Bakery, which was shifted on the books to Ernst Equipment Company; if this were treated as the act of a corporate officer appropriating to his own use funds of a corporation, this court would be without jurisdiction to pass on this phase of the trustee's claim. Park v. Cameron, 1915, 237 U.S. 616, 35 S.Ct. 719, 59 L.Ed. 1147. Where, however, a corporation is owned and controlled by one man, as is the case here, the corporate veil will be lifted, and the act of the individual will be deemed that of the corporation so as to bring it within the exception of section 70, sub. e of the Bankruptcy Act, and thus sustain federal jurisdiction. Lytle v. Andrews, 8 Cir., 1929, 34 F.2d 252; Lunsford v. Haynie, 5 Cir., 1949, 175 F.2d 603.

Section 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e provides:

"(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, *under any Federal or State law applicable thereto*, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor. (Emphasis supplied.)

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate * * *. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision [e] is valid under applicable Federal or State laws.

"(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

By the law of West Virginia, as interpreted by its courts, officers and directors of an insolvent corporation are trustees for its creditors. In Arnold v. Knapp, 1915, 75 W.Va. 804, 84 S.E. 895, 899, the West Virginia Court said: "The law by the great weight of authority seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they then can not by transfer of its property or payment of cash, prefer themselves or other creditors, and that this is so, independently of any of the provisions of the national bankruptcy law." See also, Davis v. Woolf, 4 Cir., 1945, 147 F.2d 629; and In re Lamie Chemical Co., 4 Cir., 1924, 296 F. 24.

Regardless of whether the transfers in question be denominated as fraudulent, voluntary, or preferential, the fact remains that Ernst, a director and officer of the bankrupt, by withdrawing funds, deprived the creditors, to the extent of the withdrawal, of their equitable part of the assets of Frank's Bakery, at a time when the corporation was insolvent. The evidence in this case convinces me that Frank's Bakery was insolvent, both in the strict sense and in the so-called "bankruptcy" sense, during all the time Ernst was engaged in switching items of his own indebtedness to the account of Ernst Equipment Company. It follows that all these transactions were fraudulent under the law of West Virginia.

In West Virginia there is no statutory limitation on suits to avoid fraudulent transfers. The limitation contained

182

in Section 67, sub. d(2) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2), is not exclusive, in view of section 70, sub. e which makes void transfers fraudulent "under any * * * State law applicable thereto". The trustee's suit here is governed by the West Virginia law, rather than by the limitation set out in the Bankruptcy Act. Davis v. Woolf, supra; Davis v. Willey, 9 Cir., 1921, 273 F. 397.

The proceeds of the sale of Ernst Equipment Company's machinery are properly applicable to that part of the account which remains after deducting the $15,098.53 chargeable to Ernst. Since the shifting of accounts between Ernst and Ernst Equipment Company is tainted by fraud, the security, being less in value than the amount of the legitimate debt, must be applied to the latter.

No liability has been shown which could extend to Delpha Ernst or Harold K. Ernst.

Judgment is given against Frank H. Ernst in the amount of $15,098.53.