# CHARLESTON.

H. M. BENNETT, TRUSTEE v. THE CLAY COUNTY BANK *et als.*

Submitted May 1, 1917.   Decided May 15, 1917.

1.  EQUITY—*Bill—Multifariousness.*

    A bill in equity by a trustee in bankruptcy of a bankrupt corporation, having for its purposes enforcement of the statutory liability of a stockholder of the corporation for dividends illegally and fraudulently paid to him, in favor of creditors of the corporation, and impeachment of a decree entered against the corporation, as a garnishee, or upon trustee process, in favor of a bank, predicated upon a judicially admitted and unauthorized declaration of dividends in favor of the same stockholder, filed in the circuit court of the county in which the trustee and stockholder reside, in which the corporation has its principal office and in which the corporate assets are, is multifarious and incurable by amendment, notwithstanding the bank's place of business is in another county and the decree against which relief is sought was pronounced and entered in such other county.   (p. 556).

2.  CORPORATIONS — *Fraudulent   Conveyances — Jurisdiction — Action Against Corporation—Action Against Stockholder.*

    The cause of action against the bank and the corporation, pertaining to such decree, is made cognizable in equity by the general principles of equity jurisprudence, and the cause of action against the stockholder is subjected to equity jurisdiction by the statute imposing the liability, sec. 40, ch. 53, Code.  (p. 557).

3.  SAME—*Action—Jurisdiction—Venue—Impeachment of Decree.*

    The court of the county in which the trustee and stockholder reside, in which the corporation has its principal office and in which assets of the corporation are situate or held, has cognizance of the cause of action respecting the decree the bill seeks to impeach, and process against the bank holding the decree may go to the county in which it has its office and place of business. (p. 557).

4.  EQUITY—*Bill—Multifariousness.*

    The two causes of action set up in such a bill have no substantial connection with, or relation to, one another.   (p. 558).

Appeal from Circuit Court, Lewis County.

Bill by H. M. Bennett, trustee, etc., against the Clay County Bank and others.  Bill dismissed on demurrer of the bank, and plaintiff appeals.

*Affirmed.*

*W. G. Bennett* and *Edward A. Brannon,* for appellant.

*B. C. Eakle* and *Robt. L. Bland,* for appellee.

POFFENBARGER, JUDGE:

Deeming the bill in this cause multifarious and incurable by amendment, the circuit court dismissed it on demurrer.

If it is clearly multifarious, there was no error in the court's failure or refusal to give an opportunity to amend it. *Cecil* v. *Karnes,* 61 W. Va. 543; *Shaffer* v. *Fetty,* 30 W. Va. 248, 273; *Dennie* v. *Justus,* 115 Va. 512, 516; *Boyd* v. *Hoyt,* 5 Paige Chy. (N. Y.), 79; *Gibbs* v. *Claggett,* 2 Gill & J. (Md.) 29.

It was filed by a trustee in bankruptcy, against the estate of a deceased stockholder of the bankrupt, a corporation, to enforce repayment of dividends alleged to have been fraudulently and illegally declared and paid to him, for the benefit of creditors of the bankrupt corporation, and to relieve the assets from the effect of a decree in favor of a bank, against the corporation for dividends alleged to have been so declared in favor of the same stockholder, on its admission of liability to him therefor, in its answer filed in an attachment proceeding in equity.

Though the bill does not say so in terms, it seems to proceed upon the assumption that the stockholder and the trustee in bankruptcy resided, and the corporation had its principal office and place of business, in Lewis County in which the suit was instituted. The bank proceeded against was located in Clay County, and the decree in its favor was entered in the latter county. For the purposes of review, the facts will be assumed to be in accord with this statement. They are so treated in the briefs.

The dividends in question were declared, January 16, 1907, and January 21, 1908. The Clay County Bank instituted its suit against John T. Dixon, the since deceased stockholder, and others, July 6, 1908, process therein was served on the Weston Lumber Company, the corporation, July 16, 1908, and it answered, October 13, 1908, disclosing dividends declared in favor of Dixon, January 21, 1908, amounting to $2,075.00 and unpaid. A decree requiring this sum to be

paid to the bank was entered, June 17, 1913, more than five years after the date of the answer.

In the meantime, there had been transactions between the corporation and Dixon, concerning the same dividends. On an early date in 1911, it had executed its note to him for the dividends of 1907 and 1908, amounting to $3,890.00. Unpaid when due, this amount was divided into five new notes, one for $500.00, due, August 3, 1911, one for $500.00, due August 8, 1911, one for $890.00, due, September 25, 1911, one for $1,000.00, due, November 28, 1911, and one for $1,000.00, due, December 19, 1911, all of which were paid as they became due. Thus, the dividends on which the decree of the bank is predicated, along with others, were paid to Dixon, after the answer was filed and before the decree was entered.

There is no allegation in the bill in this cause, however, that the decree was for payment of dividends specifically. Presumptively it is merely a decree in general terms for $2,-075.00 with interest. In describing it, the bill says it directs the Weston Lumber Company to pay the bank said sum with interest thereon. But it is tantamount to a judgment and is a record debt against the assets of the Weston Lumber Company in the hands of its trustee in bankruptcy, which proves itself and is no doubt unimpeachable as between the corporation and the bank, but is impeachable for fraud and illegality, if sufficiently alleged and proved, by the trustee in bankruptcy representing the creditors of the corporation.

If the dividends paid to Dixon were illegally declared, they may be recovered by the creditors of the corporation, under an express statutory provision for recovery thereof. Code, ch. 53, sec. 40.

If both demands are within the equity jurisdiction of the court and its territorial jurisdiction and are distinct in character, within the meaning of the rules and principles of equity procedure, the bill is multifarious. If one is cognizable in equity and the other only in a court of law, the latter may be treated as surplusage, wherefore the bill would set up only a single cause of action. *Sprinkle* v. *Duty*, 54 W. Va. 559. In conformity with this principle, it must be held also that, if it appears, from matter disclosed on the

face of the bill, that only one of the demand's is within the territorial jurisdiction of the court, or, in other words, is asserted in the proper county, the other would be disre, garded, and the bill would still be one stating a single cause of action.

Both demands are cognizable in equity, the one against the bank, because a fraudulent conveyance, transfer or charge in the form of a deed, deed of trust, decree or judgment, can be set aside only in a court of equity, and the other, because the statute, Code, ch. 53, sec. 40, properly construed, confers right to sue in equity for dividends illegally or fraudulently paid by a corporation to its stockholders. The provision for such recovery is in the same section with another authorizing a suit in equity to charge directors with liability in favor of creditors, for diminution of capital by illegal declarations and payments of dividends. It does not say how the stockholder's liability to refund is to be enforced, but it must be read in the light of its context and the nature of its subject matter. It gives a cause of action to the creditors against parties with whom they legally made no contracts. Such rights are generally enforced in equity, and it must be presumed the legislature intended enforcement of the liability by the most appropriate remedy, in the absence of anything indicative of a contrary intent. For enforcement of a similar liability created by the same section, it specifically makes the equitable remedies applicable. Moreover, the liability is created for the benefit of "the creditors," wherefore a proceeding to enforce it can be instituted by all of them, or by one for the benefit of all, *Benedum* v. *Bank,* 72 W. Va. 124, 142, and that can be done only in equity.

The demand against Dixon's estate was obviously proper for cognizance of the Circuit Court of Lewis County. As that was the county of two of the parties to the alleged fraud under which the Clay County Bank claims, the Weston Lumber Company and Dixon, and the assets against which the decree is asserted are presumptively in that county, the cause of action against the bank was also cognizable there. The corporation was a necessary party and could be sued in the county in which its principal office was and then process.

could go to other counties in which other defendants resided. The debtor is a necessary party to a suit to set aside a fraudulent conveyance, 5 Ency. Pl. & Pr. 542, and this is a bill of the same class. It seeks the setting aside of a decree to which the corporation is a party, a decree based upon its admission made to the detriment and injury of its creditors. This alone might sustain the jurisdiction, but there is another element. The assets of the corporation, the property affected by the decree the bill seeks to impeach, are presumptively in that county. These two facts undoubtedly confer jurisdiction on the Circuit Court of that county. *Toledo Tie & Lumber Co.* v. *Thomas,* 33 W. Va. 566.

No necessary connection between the two causes of action exists. If both are sustained, the decree in each would be complete without reference to the other. If the dividends were recovered from the estate of Dixon, they would be added to the other assets in the hands of the trustee for administration or distribution by the bankruptcy court. In this respect, it differs from a creditors suit, in which the assets are not only collected, but the liens ascertained and adjusted and distribution of the funds made. One purpose of the bill is simply the collection of a certain debt from the estate of Dixon and the bank's decree consituties no impediment to that operation. It is a decree against the Weston Lumber Company, not Dixon, and, if there is a judgment or decree against him in favor of the bank, it is founded upon some debt due directly from him to the bank. It cannot be based upon the dividends. The other purpose of the bill is impeachment of the decree in favor of the bank in so far as it binds the assets of the lumber company, not merely those to be recovered from the Dixon estate, but all of them. The two causes of action have one common question, namely, the validity of the dividends, but nothing else in common, nor any other connection. The validity of the decree is not involved in the demand against Dixon's estate, nor is the demand against his estate involved in the controversy as to the validity of the bank's decree. The trustee is interested in both, but the bank has no interest whatever in the proceeding against Dixon's estate for recovery of dividends paid. It has no decree

for dividends *eo nomine,* nor for the specific fund demanded of Dixon's estate. It has a mere decree *in personam* against the corporation. To make it a party to the proceeding against Dixon's estate, is violative of principles declared in *Shaffer* v. *Fetty,* 30 W. Va. 248. Relation of two causes of action between the same parties to a single subject matter does not make them germane. *Peters* v. *Case,* 62 W. Va. 33.

No doubt the parties to a multifarious bill may waive the objection, and the court, in the exercise of its descretion, may entertain it, in the absence of an objection; but there can be no such waiver in this cause. The objection was promptly interposed and insisted upon, before any considerable cost was incurred or delay occasioned.

Seeing no error in the decree complained of, we will affirm it.

*Affirmed.*