# CHARLESTON.

TOLBERT C. HATFIELD *et al* v. ALBERT J. HATFIELD *et al.*

Submitted October 17, 1922. Decided October 24, 1922.

1. EQUITY—*Bill Stating Two or More Equitable Causes of Action Demurrable for Multifariousness.*

   An objection to a bill in equity, stating two or more equitable causes of action, having no substantial connection in the legal sense of the terms, promptly made by demurrer, on the specific ground of multifariousness, should be sustained. (p. 171).

2. SAME.—*Bill Seeking Partition and Enforcement of Liens Multifarious.*

   A bill seeking partition of real estate and enforcement of alleged liens in favor of the plaintiff, upon the interests of some of his cotenants, sets up two separate and distinct causes of action and subjects it to the rule against multifariousness, which will be enforced in the absence of waiver by delay in the interposition of the objection and every other circumstance vesting judicial discretion as to application of that rule. (p. 170).

Certified Questions from Circuit Court, Boone County.

Suit by Tolbert C. Hatfield and others against Albert J.

Hatfield and others.   Questions of overruling demurrer to bill on ground of multifariousness certified.

<em>Reversed in part; Demurrer sustained.</em>

*W. B. Wade* and *Dice & Davis* for plaintiffs.
*J. B. Hager* and *Leftwich & Shaffer,* for defendants.

POFFENBARGER, PRESIDENT:

The bill in this cause was attacked on two grounds: (1) insufficiency of allegation of certain claims for relief; and (2), multifariousness.   On the first ground, the demurrer was sustained, and, on the second, overruled.   The omissions were cured by amendment made at the bar of the court, with leave first had.   Then the court certified its ruling as to the charge of multifariousness, for review here.

Two principal grounds of relief are set up in the bill: (1) partition of certain lands; and, (2) enforcement of liens on the interests of some of the cotenants of the plaintiff, created or provided for by the deed under which the common property is held.

By a deed dated June 12, 1919, John H. Hatfield and Sarah Ann Hatfield, his wife, conveyed to Albert J. Hatfield, John L. Hatfield, W. S. Hatfield, T. C. Hatfield, William Roy Hatfield and James W. Hatfield, in consideration of $10.00 and natural love and affection, certain interests in their several tracts of land.   The coal and other minerals, except oil and gas, in a 132.5-acre tract, went to W. S. Hatfield.   In two other tracts, one containing 185 acres and the other 193 acres, all of the grantees got certain acreages described as undivided interests; W. S. Hatfield, 46.89 acres; A. J. Hatfield, 82.84 acres; John L. Hatfield, 82.84 acres; T. C. Hatfield, 82.84 acres; William Roy Hatfield, 41.42 acres, and James W. Hatfield, 41.42 acres.   The minerals in these and other tracts were divided among the same parties in the proportions of one-fifth to each of the first four and one-tenth to each of the other two.

The grantors reserved their support for their natural lives, out of the income from the lands; and by the deed, appointed

T. C. Hatfield agent to lease them and collect the rents and place them to his credit in bank. In the event of an excess of deposits over $1,000.00, he was authorized to distribute it among the grantees. In addition to this, all of them were required to contribute in proportion to their interests, to the support and maintenance of the grantors, and, in the event of the failure of any of them to do so, any of the others, on payment of the delinquent amounts, were given liens on the interests of those failing to contribute.

The bill was filed by T. C. Hatfield, who, after the death of John H. Hatfield, was appointed his administrator, in his own right and as administrator, for partition of the lands and enforcement of alleged liens upon the interests of A. J., John L. and Smith W. Hatfield, under a provision of the deed, above mentioned, and, incidentally, for settlement of his accounts as agent and administrator of the John H. Hatfield estate. He claims expenditures of his own means in the support of the grantors, amounting to $3,138.63, and liabilities to him, on the part of A. J., John L. and Smith W. Hatfield, in the sum of $627.72 each, on account of such expenditures, which he prays may be adjudged to be liens on their respective interests in the property. He admits payment of the amounts due from William Roy and James W. Hatfield, on account of such expenditures, and his own liability as agent, in the sum of $740.00, and, as administrator, in the sum of $595.00. No embarrassment in respect of his settlements as agent or administrator is alleged, unless it be unwillingness of the delinquent grantees, to allow credits on the amounts alleged to be due from them, of the amounts they are entitled to out of the rents and personal estate, and there is no allegation of their unwillingness to do that.

Manifestly, there is no necessary connection between the main purposes of the bill, partition of the lands and enforcement of liens against certain interests therein. The partition would not in any way affect or disturb the liens. *Helmick* v. *Kraft*, 84 W. Va. 159; *Childers* v. *Loudin*, 51 W. Va. 559. It is equally apparent that the liens, if any, can be enforced against either the undivided interests in the land, before par-

tition, or the separate parcels, after partition. In a suit for partition, it would not be necessary to advert to, nor in any way involve, the liens or the settlements. Nor, in a suit or suits to enforce the liens, would there be any occasion to partition the lands. If any controversy should arise in either of such suits, the evidence necessary to determination thereof would not include any applicable to a controversy arising, or that might arise, in the other. There may be such liens as are alleged, against some of the interest and none against the others. There may be no controversy as to the right of partition or the effectuation thereof, while there may be serious contests as to the existence of the liens. In that event, the partition might be delayed pending determination of a long drawn out and bitterly contested controversy as to the liens. It is easy to perceive the possibility of serious embarrassments by reason of the joinder of these two causes of action. To be appealable, as one settling the principles of a cause, a decree must pass upon all the issues, *Cronin* v. *Hill*, 56 W. Va. 174; wherefore, if a decree on this bill should erroneously pass upon an issue as to partition, there could be no appeal from it, until after decision of the other issue as to liens, which might be delayed for months or even years. Large amounts of costs might be made on one issue and practically none on the other. Of course, they could be apportioned, but the apportionment itself would involve an issue that ought not, in fairness, to arise. Great delay in the award of clear rights might result from such joinder. Why should William Roy and James W. Hatfield, who may desire partition, have their right of separate ownership tied up and delayed in litigation over alleged liens upon the other interests? Equity would not impose such a hardship for the mere convenience of a plaintiff or of the court whose jurisdiction he invokes.

Whenever prompt objection is made to a bill setting up two equitable causes of action having no substantial connection, on the specific ground of multifariousness, it is the duty of the court to sustain the objection. *Bennett, Trustee,* v. *Clay County Bank,* 80 W. Va. 554; *Cecil* v. *Karnes,* 61 W.

Va. 543; *Harrison Co. Court* v. *Hope Natural Gas Co.,* 80 W. Va. 486; *Bean* v. *McDowell Co. Court,* 85 W. Va. 186.

An order will be entered, recording our conclusion that the demurrer to the bill should have been sustained, on the ground of multifariousness, and certified to the court below.

*Reversed in part; Demurrer sustained.*