R. E. BURDICK, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27109–27116, 27274, 27324–27329.

Promulgated December 24, 1931.

---

[1] Other parties petitioning, whose cases were consolidated herewith for hearing, are: Thomas W. Camp; Mrs. Thomas W. Camp; Estate of J. B. Barber; F. D. Gallup; C. D. Comes; Estate of J. E. Walker; J. S. Walker; Estate of F. S. Sherman; Mrs. Emily T. Camp; Mrs. Pearl McQuilken; Estate of H. E. Camp; Marion L. Camp; E. A. Riggall; F. F. Riggall.

*M. L. Seidman,* *C. P. A.,* and *Benjamin Grund,* *C. P. A.,* for the petitioners.

*J. R. Johnston,* *Esq.,* for the respondent.

1300

1302

OPINION.

BLACK: The only issue for us to decide at this time is whether petitioners are liable as transferees of the assets of Consolidated, Empire and Camp, and, if so, to what extent each is liable.

At the outset it should be stated that the proof conclusively shows that the dividends which were paid to E. A. Riggall were paid to him in name only and that such dividends were the property of

petitioner F. F. Riggall, and petitioner E. A. Riggall had no property interest therein. We therefore hold that petitioner E. A. Riggall is not liable as transferee.

By reason of section 602 of the Revenue Act of 1928, the burden of proof is upon the Commissioner to show that petitioners are liable as transferees of property of these several taxpayer corporations. In seeking to meet this burden of proof, respondent at the hearing introduced considerable evidence, both oral and documentary, and, based upon such evidence, makes certain contentions which we shall state and discuss in this opinion, although not in the precise order which respondent has stated them in his brief.

We shall first discuss the following contention of respondent, listed under No. 2 in his brief: "Any distribution to stockholders of the assets of a corporation, either while in process of dissolution or by way of ordinary cash dividends, from which a condition of insolvency results, gives rise to a liability to creditors on the part of the stockholders receiving such distribution, to the extent of the value of assets received. This liability arises under the common law and is general and independent of state statutes." In support of this contention respondent cites *Edward H. Garcin*, 22 B. T. A. at pages 1027, 1034–1036. We think the case cited supports respondent's contention. Cf. *John Gerosa*, 21 B. T. A. 1027, 1034; *J. G. Nicholas*, 22 B. T. A. 477. In the application of the principles of law laid down by respondent in this contention, it will be seen that respondent has two things to prove in order to establish the liability which he is asserting against petitioners in this proceeding, viz, (1) he must prove that the distribution of assets rendered the transferor corporation insolvent (*Kinnett-Odom Co.*, 19 B. T. A. 1124; *Samuel W. Keller*, 21 B. T. A. 84; *Frances W. Haines*, 20 B. T. A. 721; *Eliza J. Wray*, 24 B. T. A. 94); and (2) he must prove the value, if any, of the assets which each petitioner received at the time such assets were received. For, regardless of the amount of the tax which the transferor may owe, the liability in equity of a transferee of property is limited by the net value of the property which he has received (*Phillips* v. *Commissioner*, 283 U. S. 589; *United States* v. *Updike*, 281 U. S. 489; *United States* v. *McHatton*, 266 Fed. 602; *Capps Mfg. Co.* v. *United States*, 15 Fed. (2d) 528). If the respondent does not sustain the burden of proof as to either (1) or (2), he fails. It therefore becomes our task to study the facts in this proceeding and determine whether the respondent has sustained the burden of proof placed upon him by the statute.

As will be seen by an examination of our findings of fact, Consolidated made two distributions to stockholders, viz., (1) a dividend of $194,700, which was paid by a distribution to each stock-

holder of his demand note, and a cancellation of his liability thereon, which had been previously given to the corporation in payment of stock; (2) a distribution to its stockholders, in partial liquidation, of 6,000 shares of preferred stock of the Interstate Glass Company of a par value of $100 per share. These distributions took place at different dates and under different circumstances and were not a part of the same transaction and therefore must be considered separately. We will first consider the distribution of promissory notes.

### Distribution of promissory notes.

Petitioners contend that these demand notes were executed and delivered by the several stockholders of Consolidated as a part of a plan for a declaration of a stock dividend; that the stockholders had agreed among themselves and with the officers of Consolidated that such notes should never be paid; that they were unenforceable in the hands of the corporation; that creditors of the corporation have no equitable claim upon them; and that their distribution to stockholders in the form of a dividend was a distribution of something which had no value, and hence petitioners could not be held liable as transferees as a result of such distribution.

There was considerable testimony at the hearing to support these contentions, but, even if we take the view that the notes were given as a part of a plan for the declaration and payment of a stock dividend, we do not think that fact would have any bearing on the determination of transferee liability. If the question before us was one as to whether the distribution of the notes was taxable income, it would probably be very important to determine whether the notes were part of a plan to bring about a stock dividend distribution, just as it was to determine the character of the check payments involved in *Jackson* v. *Commissioner*, 51 Fed. (2d) 650, cited by petitioner, but the question now before us is not to determine income-tax liability, but transferee liability.

These demand notes, when they were paid in for capital stock, became the property of the corporation just as effectively as if they had been cash and the corporation could not subsequently cancel them or distribute them to the stockholders of the corporation as a dividend if to do so impaired the rights of creditors. *Fogg* v. *Blair*, 139 U. S. 118; *Camden* v. *Stuart*, 144 U. S. 104.

Petitioners, in support of their contention that the distribution of these notes to the stockholders as a dividend did not create a transferee liability, cite *Jackson* v. *Commissioner*, *supra*; *Joseph A. Steinle*, 19 B. T. A. 325. For reasons which we have already briefly stated, we do not think *Jackson* v. *Commissioner*, *supra*, is in point.

In *Joseph A. Steinle, supra,* the taxpayer corporation was the Four Lakes Ordnance Company, and the promissory notes which were executed by the stockholders were made payable to the Steinle Turret Machine Company and delivered to it and were never at any time delivered or held by the taxpayer corporation, the Four Lakes Ordnance Company. Upon the facts of that case we said: " Upon the facts we can not conclude that these several petitioners paid in to the taxpayer for their stock assets in amounts totaling $100,000 and thereafter received back in distribution assets of that company in similar amounts." Therefore, *Joseph A. Steinle, supra,* is distinguishable on the facts from the instant case, because in the instant case we do find as an affirmative fact that petitioners paid in to Consolidated their promissory notes for capital stock and this capital stock was issued to them. These promissory notes became assets of the corporation and the evidence shows that on several occasions some of the notes were discounted at the bank and cash was procured thereon and used in the business of the corporation. We hold, therefore, that when the notes were distributed to the stockholders in the payment of a dividend previously declared, and all liability to the corporation on the notes was canceled, it was a distribution of property belonging to the corporation, and if this distribution created a condition of insolvency in the taxpayer corporation, then under authority of cases which we have already cited, petitioners are liable as transferees to the extent of the face value of their notes, that amount being in each instance a less amount than the amount of the deficiency due.

In determining whether this distribution created a condition of insolvency, petitioner contends that the basic date should be November 30, 1920, the date when the dividend was declared.

Respondent contends that the basic date is January 1, 1922, the date when the dividend was, by the express terms of the resolution declaring it, made payable. In the view we take we find it unnecessary to discuss at length these respective contentions of the parties.

If we take January 1, 1922, as the basic date (as contended for by respondent), the facts show that the distribution of the promissory notes which was made on that date, while it impaired the capital stock of the corporation to some extent, did not create a condition of insolvency. The corporation was left with assets of value ample to pay its debts, including the deficiencies involved in this proceeding. These deficiencies, although unknown at that time, must be considered in determining whether or not the transferor corporation was made insolvent by the distribution. *Samuel Keller,* 21 B. T. A. 84. At the time this distribution was made, and immediately after, Consolidated still owned all the capital stock of its four subsidiaries, Camp, Em-

pire, Smethport and McCoy, which had a value considerably in excess of all its liabilities, besides other assets. It seems clear to us that the distribution of the $194,700 dividend on January 1, 1922, by the method of cancellation of notes, did not create a condition of insolvency of Consolidated.

In *Samuel Keller, supra*, we discussed at length the effect of a partial distribution of assets to stockholders, where, although such distribution did impair the capital stock of the corporation, it did not leave the transferor corporation insolvent and unable to pay its debts and it continued in business until some years later. We there held that such partial distribution of assets, creating no condition of insolvency, did not make petitioners liable as transferees of property within the meaning of section 280. Cf. *Eliza J. Wray*, 24 B. T. A. 94.

On the authority of the above cited cases, we hold that the distribution of promissory notes to petitioners on January 1, 1922, did not create a liability against them as transferees of property under the general rules governing transferee liability, because it did not create a condition of insolvency. If such transferee liability exists, it is by reason of certain provisions of the West Virginia statute. This phase of the proceeding will be discussed later on in this opinion.

### Distribution of stock of Interstate.

As has been pointed out in our findings of fact, on August 15, 1922, Consolidated declared a dividend of 70 per cent of the par value of its capital stock, payable in shares of the preferred stock of Interstate, valued for the purpose of the distribution at $70 per share. Clearly, this distribution was to be made as a part of the plan of final liquidation of Consolidated. Respondent contends that the distribution was as of August 15, 1922, the date of the dividend declaration, because such declaration of dividend was complete and unconditional, and provided that it should be paid forthwith. Petitioner contends that the basic date of distribution should be held to be in August, 1924, which is the time the preferred shares of Interstate were actually distributed to the shareholders of Consolidated.

In the view we take of the evidence, it is unimportant that we determine which is the basic date, because we are unable to determine from the evidence what, if any, value these shares of preferred stock in Interstate had at either date. Even if it be conceded, as respondent contends, that August 15, 1922, is the basic date, and that he has proved that the distribution of 6,000 shares of preferred stock of Interstate rendered Consolidated insolvent (a fact which petitioners vigorously dispute because Consolidated still retained

502 shares of Interstate preferred stock and other property for the very purpose of paying any liabilities which it might owe), respondent still has not made out his case to hold petitioners liable as transferees of property, for he has failed to prove the value of the property which they received. *Ludwig Vogelstein*, 16 B. T. A. 947; *Angier Corporation*, 17 B. T. A. 1376; *Eliza J. Wray, supra; American Feature Film Co.*, 24 B. T. A. 18.

The only evidence of the value of Interstate preferred stock introduced by respondent was the stockholders' resolution of August 15, 1922, declaring the dividend payable in preferred stock of Interstate, and reciting that such stock had a value of $70 per share, but statements of value in corporate minutes are not conclusive and are subject to rebuttal and explanation. This is particularly true in a case like the present one, where the corporation itself is not before us, but only the stockholders, whom respondent is seeking to hold as transferees. Cf. *Pacific Coast Pipe Line Co.*, 11 B. T. A. 1329; *Sterling & Welch Co.*, 15 B. T. A. 925.

Two witnesses called by respondent, F. F. Riggall and R. A. Hill, both testified in substance that Interstate was a failure from the beginning and that its management was bad from the beginning. Thomas W. Camp, called by petitioners, testified to the same effect. F. F. Riggall had been in the glass business for about thirty years and was secretary and treasurer of Consolidated and some of its subsidiaries, and was purchasing agent of Interstate. He is one of the petitioners in this proceeding. He testified that Interstate preferred stock had no value either in August, 1922, or in August, 1924. R. A. Hill was an officer and stockholder of Interstate and was its receiver appointed in 1925 to take charge of its affairs. His testimony as to the value of this preferred stock of Interstate in 1922 was as follows:

Q. Now have you any opinion as to whether that stock had any value in August 1922, the preferred stock we are talking about here?

A. Well, it would have a book value which should be established. Whether it had a fair value, I would not think it had very much.

Q. And, of course, when we got into August 1924, your opinion as to its value would be less, that is, if it was worth nothing in 1922, it would be worth nothing in 1924?

A. I would not say it was worth nothing in 1922, but it was not worth as much in 1924 as 1922, for outside of the first year they operated at a loss.

The witness, R. A. Hill, who was called by respondent, is not a petitioner in this proceeding and, so far as the record discloses, has no interest in its outcome.

Thomas W. Camp, one of the petitioners herein, was in the glass business fifty years, was president of Consolidated and several of its subsidiaries, and was general manager of Interstate. His testimony

was that Interstate stock, preferred or common, never had any market value or actual value. It was never listed on any exchange and he never knew of any sales being made of it. He testified that it was unsalable.

These three witnesses attributed Interstate's failure to bad management from the beginning, inclusion of antiquated plants in its organization, and discovery and use of newer and cheaper processes by competitors and consequent reduction in price.

No evidence of the assets and liabilities of Interstate was introduced, except as to the liability of Interstate for a $3,000,000 bond issue. In the absence of any evidence showing market quotations of the stock, or of any actual sales, or of the value of the underlying assets of the corporation, we are unable to make any finding as to the value of preferred shares of Interstate, either in 1922, at the time the dividend payable in preferred shares of Interstate was declared, or in 1924, when such shares were actually distributed to petitioners. All that we could do on this point would be to hazard a guess, and we do not think transferee liability should be determined that way.

On the authority of the cases already cited, we hold that respondent has failed to show that petitioners are transferees of property by reason of their receipt of the Interstate preferred stock, because he has failed to show what, if any, value the stock had at the time it was received by petitioners.

### West Virginia statute regarding impairment of capital.

But, respondent contends, as to the dividend distribution of the promissory notes, that, even if it did not create a condition of insolvency in the corporation, nevertheless such distribution impaired the capital stock of Consolidated and that to the extent the capital stock was impaired thereby, the stockholders are liable to creditors under the laws of the State of West Virginia.

In support of this contention, respondent cites sec. 40, West Virginia Code, 1916, which reads: "If the board declare a dividend by which the capital of the corporation shall be diminished, all the members present who do not dissent therefrom and cause said dissent to be entered on the record of their proceedings, shall be jointly and severally liable to the creditors of the corporation for the amount the capital may have been so diminished, and may be decreed against therefor on a bill in equity filed by any creditor, *and moreover, every stockholder who has received any such dividend shall be liable to the creditors for the amount of capital so received by him.*" (Italics supplied.)

This same provision is carried in Barnes West Virginia Code, Annotated, 1923, as section 40, chapter 53. The Supreme Court

of Appeals of the State of West Virginia had occasion to construe this statute in *Arnold* v. *Knapp*, 75 W. Va. 804; 84 S. E. 895. In that case, plaintiff Arnold, as trustee in bankruptcy of the Knapp-Sanderson Company, a corporation adjudged a bankrupt in January, 1911, filed a bill in equity, the object of which was, among other things, to recover from defendant Knapp the sum of $287.50 paid to him as a dividend on the stock held by him in said company, declared by the board of directors on January 20, 1910, but not paid to Knapp or credited to him until November 16, 1910, such dividend as alleged having been made when said company was insolvent and had no surplus out of which to declare a dividend and made in impairment of its capital stock.

In holding that the bill in equity was properly brought, the court said: "Was there complete and adequate remedy at law and was equity without jurisdiction to grant the relief prayed for? We think jurisdiction in equity well grounded. The statute, sec. 40, ch. 53, serial section 2873, Code 1913, gives equity jurisdiction at the suit of creditors to recover the amount the capital may have been diminished by the distribution and payment of dividends. If creditors may so sue, the trustee in bankruptcy representing them, we think, should also be entitled to go into equity for the same purpose."

To the same effect is *Bennett* v. *Bank*, 80 W. Va. 554; 93 S. E. 353. Thus it will be seen that, under authority of the above cited cases, creditors of a West Virginia corporation have the right to sue in equity the stockholders who have received a dividend, the payment of which impaired the capital stock of the corporation, and secure a decree against them to the extent of the dividend so received. The Government is a creditor of the corporation to the extent of the tax due, and, as to general creditors, it is a preferred creditor. Section 280 of the Revenue Act of 1926 gives the Government the right to assess and collect against a transferee any tax due by the transferor, to the extent of any liability *at law or in equity* of the transferee of property of the taxpayer.

Since, under the laws of the State of West Virginia, a stockholder who has been paid a dividend in impairment of the capital stock of the corporation is liable in equity to the creditors of the corporation for the amount of the dividend which he has so received, we hold that the Government has a claim in equity against the petitioners in this proceeding.

Respondent contends that the basic date for determining the extent of the liability of each petitioner in this proceeding is January 1, 1922, the date when the dividend was payable, rather than Novem-

ber, 1920, the date of declaration of the dividend. We do not agree with this contention.

This question of the effect upon a corporation's capital stock and surplus account of the declaration of a dividend was fully discussed in connection with determining the taxpayer's invested capital in *W. E. Caldwell Co.*, 6 B. T. A. 47. We there held that the date of declaration of the dividend was the basic date for determining its effect on invested capital. In the instant case we have for our construction a West Virginia statute which makes the stockholders liable to the creditors for a dividend which they have received, which said dividend when *declared* by the directors was declared in impairment of the capital of the corporation. In view of the express language of the West Virginia code by which petitioners' liability, if any, exists, and the authorities above cited, we hold that the date of the declaration of the dividend, November 30, 1920, is the basic date for determining what, if any, extent the capital of the corporation was impaired thereby. Cf. *United States* v. *Guinzburg*, 278 Fed. 363; *Weed* v. *United States*, 38 Fed. (2d) 935. The cases cited by respondent have to do with the taxation of dividends as income to the recipients and as to when such dividends become available to the taxpayer for the purposes of taxation, and are not in point.

At the time the dividend of November 30, 1920, of $194,700 was declared, the surplus of Consolidated was $98,704.85, and to the extent of the difference between $194,700 and $98,704.85 (surplus available for dividends), the capital of the corporation was impaired thereby. Therefore we find that 507/1000 of the amount which each petitioner received was paid out of surplus and we hold that as to that amount of their distribution petitioners are not liable as transferees.

We further find that 493/1000 of the amount which each petitioner received was paid out of the capital of the corporation, and we hold that, under the statutes of West Virginia and the decisions of the Supreme Court of that State, each recipient can be compelled to account for such payments to creditors of the corporation. We therefore hold that petitioners are liable to this extent as transferees of property of Consolidated.

We hold that there is no liability of petitioners as transferees of property of Camp and Empire, because at the time this dividend of $194,700 was paid by Consolidated to its stockholders, Consolidated had not become liable as transferee of Camp and Empire. It was not until July 1, 1922, that Camp and Empire were dissolved and their assets, consisting principally of stock in Interstate, were distributed to Consolidated.

For reasons already stated, we hold that petitioners are not liable as transferees of property either of Consolidated, Camp, or Empire in so far as the receipt of the stock of Interstate is concerned, because respondent has failed to show what, if any, value said stock had at the time of its distribution.

In Docket No. 27328, E. A. Riggall, petitioner, decision will be entered that there is no liability as transferee.

As to the remaining dockets, these proceedings will be restored to the Day Calendar for further hearing on the amount of the deficiencies due for the respective years from the Consolidated Glass Company.

No hearing will be had as to the deficiencies asserted against the Empire Glass Company and Camp Glass Company, because for reasons already stated we hold petitioners are not liable as transferees of the property of these two corporations, either on account of the distribution of notes or of the stock of Interstate.

Reviewed by the Board.

STERNHAGEN, TRAMMELL, and ARUNDELL concur in the result.