Alexander Grosshandler, as Transferee of Beaumart, Incorporated, et al. 1a v. Commissioner, Respondent. Grosshandler v. Commissioner
Docket Nos. 16344, 16366, 16368, 16369, 16372.
United States Tax Court
T.C. Memo 1954-13; 1954 Tax Ct. Memo LEXIS 232; 13 T.C.M. (CCH) 383; T.C.M. (RIA) 54119; April 20, 1954. Filed Max Berkowitz, 2450 Main Street, Bridgeport, Conn., pro se, in Docket No. 16368. Harry Grosshandler, 307 Lincoln Avenue, Bridgeport, Conn., pro se, in Docket No. 16369. Joseph Landis, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and additions to tax for fraud with intent to evade tax as follows: Addition
Docket No.
Year
Deficiency
to tax
16366
Estate of Samuel
1942
$ 55,680.62
$ 27,840.31
Grosshandler, Deceased,
Clarice Neumann, Ad-
ministratrix
1943
75,456.15
37,728.08 He also determined that the following were liable as transferees of the assets of Beaumart, Incorporated for the amounts listed below and interest thereon: Docket No.
Liability
16372
Estate of Samuel Gross-
$ 223,266.03
handler, Deceased, Clarice plus claim
Neumann, Administratrix for increased
liability of
$ 10,852.34
[2]
16344
Alexander Grosshandler
$ 69,415.83
16368
Max Berkowitz
2,060.00
16369
Harry Grosshandler
15,701.29
*234 The issues are: 1. Is any part of the deficiency due from Samuel Grosshandler for each of the calendar years 1942 and 1943 [3] due to fraud with intent to evade tax? 2. Did the respondent err in failing to apply the forgiveness provisions of the Current Tax Payment Act of 1943 in determining the liability of Samuel Grosshandler for the years 1942 and 1943? 3. Are the petitioners *235 in Docket Nos. 16344, 16368, 16369 and 16372 liable at law or in equity as transferees of the assets of Beaumart, Incorporated, in respect of the taxes and additions to tax due from Beaumart, Incorporated, for the calendar year 1942 and the taxable period January 1, to July 31, 1943? [4]
Findings of Fact Samuel Grosshandler was a resident of Bridgeport, Connecticut. His income tax returns for the calendar years 1942 and 1943 were filed with the collector of internal revenue for the district of Connecticut. He died on February 17, 1953, and on April 17, 1953, Clarice Neumann qualified as administratrix of his estate. Alexander Grosshandler is a resident of Los Angeles, California. Max Berkowitz and Harry Grosshandler are residents of Bridgeport, Connecticut. Beaumart, Incorporated (hereinafter referred *236 to as "Beaumart") was a corporation organized under the laws of the State of Connecticut. At all times material herein it was engaged in the business of bottling and rectifying whiskey. From October, 1935, until Beaumart's existence ceased in 1943, Samuel Grosshandler (hereinafter referred to as "Samuel") was its treasurer and conducted the affairs of the corporation. Its income, declared value excess profits and excess profits tax returns for the calendar year 1942 and for the taxable period January 1 to July 31, 1943, were filed with the collector of internal revenue for the district of Connecticut. These returns were signed by Samuel Grosshandler, as treasurer. Beaumart's existence terminated on July 31, 1943. In May, 1942, Beaumart sold to Mark D. Leff certain whiskey warehouse receipts for $ 20,762.99. Collection of the sales price was effected by a sight draft in that amount drawn by Beaumart on Leff. The draft was collected by the First National Bank & Trust Co., Bridgeport, Connecticut (hereinafter referred to as "First National") and the proceeds credited by First National on May 7, 1942, to a checking account in the name of Beaumart. On July 30, 1942, Beaumart sold to *237 Sidney B. Flashman Co. ten whiskey warehouse receipts for $ 22,899.92. Collection of the sales price was effected by a sight draft in that amount drawn by Beaumart on the purchaser. The draft was collected by First National and the proceeds credited on August 3, 1942 to Beaumart's checking account. On August 12, 1942, Beaumart sold to Sidney B. Flashman Co. warehouse receipts for rum for $ 3,158.18. Collection of the sales price was effected by a sight draft in that amount drawn by Beaumart on the purchaser. The draft was collected by First National and the proceeds credited on August 21, 1942, to Beaumart's checking account. On September 11, 1942, Sidney B. Flashman Co. paid to Beaumart by check $ 725.85 due from Flashman to Beaumart on a previous transaction. The check was deposited in Beaumart's checking account at First National on September 14, 1942. On September 4, 1942, Beaumart sold to Sidney B. Flashman Co. whiskey warehouse receipts for $ 5,601.76. Collection of the sales price was effected by a sight draft in that amount drawn by Beaumart on the purchaser. The draft was collected by First National and the proceeds credited on September 17, 1942, to Beaumart's checking *238 account. On October 29, 1942, Beaumart sold certain whiskey warehouse receipts to Philadelphia Acceptance Corporation for $ 26,472.49. Collection of the sales price was effected by sight draft in that amount drawn by Beaumart on the purchaser. The draft was collected by First National and the proceeds credited on November 5, 1942, to Beaumart's checking account. A special agent for the Intelligence Division of the Treasury Department was assigned in 1945 to investigate the tax liability of Beaumart. On three occasions he asked Samuel Grosshandler for the books of Beaumart. On his first visit Samuel told him that he would look and see what books they had; that they were out of business, and on the second and third visits Samuel told him that the books had been inadvertently sent by his wife to the Salvation Army. The agent was never able to get the books of Beaumart. Beaumart had maintained a regular set of double entry books, consisting of a cash book, purchase book, sales book, general ledger and several subsidiary ledgers. Reuben Pollowitz, a certified public accountant, audited Beaumart's books from some time in 1930 until the end of Beaumart's corporate existence. During *239 the periods here involved he generally made monthly audits of its books, but at times the audits were made every second or third month. As a part of his audit he would reconcile cash per books with bank statements. Deposits shown on the statements would be verified against Beaumart's cash book. Beaumart's bookkeeper would submit a trial balance to Pollowitz who verified it against its general ledger. The trial balances reflected the balances shown in the general ledger accounts. Except for the trial balance of February 1, 1942, which showed a First National account of $ 37.44, none of the monthly trial balances submitted to Pollowitz in 1942 reflected the First National bank account. In preparing Beaumart's income tax returns for the calendar year 1942 and the taxable year January 1 to July 31, 1943, Pollowitz used the trial balances of Beaumart's general ledger. The credits and deposits to Beaumart's account with First National were not recorded in Beaumart's books and the sales which the credits and deposits represented were not included in the sales reflected in Beaumart's books. The sales which the credits and deposits in Beaumart's First National account represented *240 were not reported on Beaumart's income tax return for the calendar year 1942. Samuel was authorized to sign checks drawn on Beaumart's account at First National. Samuel availed himself of the funds in Beaumart's account at First National for his personal use and benefit. Samuel repaid a loan on his personal life insurance by check in the amount of $ 700, dated May 28, 1942, drawn on Beaumart's account at First National. Samuel paid a premium on his personal life insurance by check in the amount of $ 785, dated July 7, 1942, drawn on Beaumart's account at First National. The following checks were drawn by Samuel on Beaumart's account at First National and cashed: Date
Amount
May 8, 1942
$ 500.00
August 4, 1942
1,500.00
October 5, 1942
200.00
Checks in the respective amounts of $ 5,500 and $ 250 were drawn by Samuel on Beaumart's account at First National on November 19 and November 24, 1942, and deposited by him on those dates in his personal bank account at the Mercantile National Bank, Miami Beach, Florida. Between May 1, 1942, and September 1, 1942, Beaumart's outstanding capital stock (total common and preferred) increased from $ 150,000 to $ *241 200,000. All of the additional stock issued between these two dates was purchased. On May 28, 1942, a check for $ 7,000 was drawn on Beaumart's account at First National, and on the same day deposited in Beaumart's account in The West Side Bank, Bridgeport, Connecticut. On July 22, 1942, a check for $ 10,000 was drawn by Samuel on Beaumart's account at First National, and on July 23, 1942, $ 10,000 was deposited in Beaumart's account in The West Side Bank. On August 6, 1942, a check for $ 20,000 was drawn by Samuel on Beaumart's account at First National, and on the same date $ 20,000 was deposited in Beaumart's account at Bank of the Manhattan Company, New York City. On November 1, 1942, the notes payable of Beaumart to the Bank of Manhattan Company amounted to $ 50,000. On November 6, 1942 a check for $ 25,000 was drawn on Beaumart's account at First National and applied during December, 1942, in part payment of a note of Beaumart, held by the Bank of the Manhattan Company. On December 29, 1942, a check for $ 25,000 was drawn by Samuel on Beaumart's account at The West Side Bank, which check, payable to Samuel, was deposited by him on December 30, 1942, in his personal checking *242 account at The West Side Bank. No part of the funds of the Beaumart accounts at First National and at The West Side Bank which Samuel withdrew for himself was included in the income reported by him on his income tax return for the calendar year 1942. Edgar M. Fitzsimons was, in 1943, the president of Old Collins Company, Inc. During 1943, Old Collins Company, Inc., through Fitzsimons sold to Beaumart two lots of brandy. The first lot was paid for and accepted by Beaumart. Included in Beaumart's check for $ 15,351 in payment of that lot was a deposit in the amount of $ 5,000 on the second lot of brandy. Beaumart was dissatisfied with the brandy and demanded that the deal for the second lot of brandy be cancelled and the deposit be refunded. Fitzsimons agreed to the cancellation of the second lot of brandy and his firm issued a check to him in blank in the amount of the refund, $ 5,000, plus $ 63 storage charges. Samuel asked that the refund be made in cash; accordingly, the check was cashed by Fitzsimons and the cash handed to Samuel. Beaumart's check of $ 15,351, which included the $ 5,000 deposit, was charged on its books to purchases. The refund of $ 5,063 was not deposited *243 in any of Beaumart's bank accounts. Samuel did not include in the income reported by him on his income tax return for 1943 any part of the $ 5,063 received in cash from Fitzsimons. Sometime in 1943, Samuel decided to cause Beaumart to liquidate and dissolve. Thereupon he proceeded to withdraw cash from Beaumart's account at The West Side Bank and deposit it in his personal account at The West Side Bank. The amounts, and dates of these withdrawals and deposits were as follows: Withdrawals from Beaumart's account
Date of Check
Amount
March 12, 1943
$ 60,000.00
May 3, 1943
25,000.00
May 6, 1943
25,000.00
June 10, 1943
68,000.00
June 14, 1943
27,000.00
June 19, 1943
13,000.00
July 20, 1943
25,000.00
July 21, 1943
2,505.60
July 22, 1943
879.00
July 31, 1943
1,838.39
Deposits in Samuel's account
Date of Deposit
Amount
March 15, 1943
$ 60,000.00
May 3, 1943
25,000.00
May 6, 1943
25,000.00
June 10, 1943
68,000.00
June 14, 1943
27,000.00
June 19, 1943
13,000.00
July 20, 1943
25,000.00
July 24, 1943
2,505.60
July 24, 1943
879.00
August 3, 1943
1,838.39 On October 7, 1943, Samuel cashed a check drawn that day *244 on Beaumart's account at The West Side Bank in the amount of $ 895.42. On June 28, 1943, Samuel withdrew $ 15,000 from his personal account at The West Side Bank and deposited it in Beaumart's account at that bank. In the liquidation of Beaumart, Alexander Grosshandler received at least $ 34,542.91 from Beaumart, of which $ 165 represented dividends and the balance was in redemption of his Beaumart stock. In the liquidation of Beaumart, Max Berkowitz received from Beaumart $ 2,060 without consideration. In the liquidation of Beaumart, Harry Grosshandler received $ 8,000 in redemption of his Beaumart stock and $ 240 as dividends. In July 1943, Harry Grosshandler made arrangements to sell the fixed assets of Beaumart to Seggerman Nixon Corporation for $ 12,000. On July 23, 1943, that corporation, by a check payable to Harry Grosshandler, made a "Deposit on purchase of equipment and fixtures from Beaumart, Inc., Bridgeport, Conn." of $ 1,000. On July 24, 1943, Harry Grosshandler paid to Beaumart $ 5,238.71, which was the adjusted basis to Beaumart of the assets sold. On July 26, 1943, Seggerman Nixon Corporation issued its check in the amount of $ 11,000, for the balance of *245 the purchase price, to Albert L. Coles, Agent. The check was endorsed by Coles to Harry Grosshandler. The assets had a fair market value of not less than $ 12,000 at that time. The assets and liabilities of Beaumart, as shown on its balance sheet as of July 31, 1943, were as follows: ASSETS
Cash in West Side Bank
$ 8,592.71
Due from Collector of Internal
Revenue
216.22
Prepaid Insurance
250.00
Due from Samuel Grosshandler
14,550.00
Petty Cash
25.00
Total Assets
$ 23,633.93
LIABILITIES [5]
Reserve for State Income Tax
$ 533.96
Reserve for Federal Income Tax
6,220.36
Capital Stock Common
retired at par
Capital Stock Preferred
retired at par
Surplus
16,879.61
Total liabilities and capital
$ 23,633.93
The income and declared value excess-profits tax, and excess-profits tax, returns of Beaumart for the calendar year 1942 were filed on March 15, 1943, and for the period January 1 to July 31, 1943, were filed *246 on October 14, 1943. On August 12, 1947, the respondent mailed notices to Samuel, Alexander and Harry Grosshandler, and to Max Berkowitz, advising them that the following amounts of the deficiencies in tax and additions to tax for fraud, plus interest, determined to be due from Beaumart for the year 1942 and for the taxable year January 1 to July 31, 1943, would be assessed against them as transferees of assets of Beaumart: Samuel
Alexander
Harry
Max
Income tax
$ 2,832.13
$ 880.54
$ 199.17
$ 26.13
Addition to tax
1,416.06
440.27
99.59
13.07
Declared value excess-profits
tax
20,709.73
6,438.88
1,456.42
191.08
Addition to tax
10,354.87
3,219.44
728.21
95.54
Excess-profits tax
125,302.16
38,957.80
8,811.93
1,156.12
Addition to tax
62,651.08
19,478.90
4,405.97
578.06
On February 14, 1947, Samuel executed in writing an agreement extending the time within which his liability as transferee of the assets of Beaumart for any income, excess-profits taxes or war-profits taxes (including interest, additional amounts, and additions to the tax provided by law) imposed against or due from Beaumart for the year ended December 31, 1942, might *247 be assessed, to June 30, 1948. On February 17, 1947, Max Berkowitz executed in writing an agreement extending the time within his liability as transferee of the assets of Beaumart for any income, excess-profits, or war-profits taxes (including interest, additional amounts, and additions to the tax provided by law) imposed against or due from Beaumart for the taxable period ended within the year 1943, might be assessed, to June 30, 1948. Samuel's income tax return for 1942 was filed with the collector of internal revenue on March 15, 1943, and his return for 1943 was filed with the collector on March 4, 1944. The deficiency notice for both years was mailed by the Commissioner to Samuel on August 12, 1947. Part of the deficiencies in income, declared value excess profits, and excess-profits taxes determined against Samuel for each of the years 1942 and 1943 was due to fraud with intent to evade tax, and his income tax returns for those years were false or fraudulent with intent to evade tax. The Federal income, declared value excess profits, and excess-profits tax returns of Beaumart, filed for the taxable years 1942 and 1943 were false or fraudulent with intent to evade tax, and *248 a part of the deficiencies for each of those years was due to fraud with intent to evade tax. The following deficiencies and additions to tax for fraud are due from Beaumart: Income
Addition
D.V.E.P.
Addition
Excess prof-
Addition
Year
Tax
to Tax
Tax
to Tax
its Tax
to Tax
1942
$ 4,005.93
$ 2,002.97
$ 9,253.11
$ 4,626.56
$ 51,072.98
$ 25,536.49
1/1
20,039.97
10,019.98
126,161.91
63,080.96
to
7/31
/43 No part of these deficiencies or additions to tax has been paid and upon termination on July 31, 1943, Beaumart was without assets sufficient to pay them. Opinion RAUM, Judge: Liability of estate of Samuel Grosshandler (Docket 16366) for deficiencies in income tax and additions to tax for fraud with intent to evade tax for the years 1942 and 1943. The burden of proving that Samuel did not owe the deficiencies in income tax determined against him by respondent for the years 1942 and 1943 was on the petitioner in Docket 16366. Petitioner has not attempted to sustain this burden. Although various allegations were made in an Amended Petition filed by Samuel prior to his death that, in determining the deficiencies, the *249 respondent erred in adding certain amounts to the income reported in his returns for 1942 and 1943 and in disallowing certain deductions claimed in those returns, no appearance was made on behalf of petitioner in Docket 16366 and no evidence was offered to sustain the allegations of error. In the circumstances we must hold that the respondents did not err in determining there were deficiencies in income tax of Samuel for the year 1942 in the amount of $ 55,680.22 and for the year 1943 in the amount of $ 75,456.15. In an Amended Petition Samuel alleged that the assessment of the deficiencies for the years 1942 and 1943 is barred by the statute of limitations, and that he is entitled to the benefits of the forgiveness provisions of the Current Tax Payment Act of 1943 in the determination of his tax liability for the years 1942 and 1943. Samuel's income tax return for 1942 was filed on March 15, 1943, and his return for 1943 was filed on March 4, 1944. The deficiency notice for both years was mailed on August 12, 1947. Section 275(a) of the Internal Revenue Code provides that income taxes shall be assessed within three years after the return was filed, and that *250 no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. The deficiency notice was not mailed within the three-year period provided in this section. Section 276(a) provides, however, that, in the case of a false or fraudulent return with intent to evade tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time, and Section 276(b) provides that where, before the expiration of the time prescribed in Section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. No consent extending the statutory period was executed by the Commissioner and Samuel. The respondent urges that the deficiency notice mailed on August 12, 1947, was timely under the provisions of Section 276(a) because the returns of Samuel for the years 1942 and 1943 were false or fraudulent and a part of the deficiency in tax for each of these years was due to fraud with intent to evade tax. The burden of proving fraud *251 is on the respondent. The respondent introduced evidence showing that Samuel was the treasurer of Beaumart; that during 1942 it sold approximately $ 80,000 worth of warehouse receipts; that the greater part of the proceeds of these sales were collected by the First National Bank & Trust Co., and credited to a checking account in that bank in the name of Beaumart; that the sales were not entered in Beaumart's books and the checking account was not reflected on its books; that the transactions were concealed from the accountant who prepared Beaumart's 1942 income tax return and the income reported thereon did not include the proceeds of the warehouse receipt sales; that Samuel, who was authorized to sign checks on the First National account, withdrew for his own use or benefit a portion of the funds in this account; and that he failed to include any part of such funds in the income which he reported in his return for the year 1942. This evidence clearly indicates a fraudulent intention on the part of Samuel to evade tax on income realized by him during that year. The sums which he thus took from Beaumart constituted taxable income. Cf. W. L. Kann, 18 T.C. 1032, affirmed, *252 210 Fed. (2d) 247 (C.A. 3). His failure to report this income in his return for 1942 convinces us that this return was false or fraudulent with intent to evade tax, and that part of the deficiency determined against him for that year was due to fraud with intent to evade tax. We have made a finding to this effect. We hold, therefore, that the respondent did not err in determining the deficiencies in tax and additions to tax for fraud against Samuel for the year 1942 and that assessment is not barred by the statute of limitations. Furthermore, since additions to the tax for 1942 are applicable by reason of fraud, the forgiveness features of the Current Tax Payment Act of 1943 do not apply. Section 6, Current Tax Payment Act of 1943. Similarly, we are satisfied that fraud has been established for the year 1943, because Samuel failed to include in income for that year a $ 5,063 refund of a deposit on a purchase made by Beaumart. The evidence discloses that Samuel asked that this refund be paid to him in cash rather than by check, and that this was done by the vendor of brandy. Moreover, an examination of Beaumart's bank accounts does not disclose that it was deposited therein. *253 We are convinced that Samuel took this amount for himself, as he had done with other amounts during the preceding year, and that his failure to include it in reported income was deliberate and fraudulent. Liability of the Estate of Samuel Grosshandler and Alexander Grosshandler, Max Berkowitz and Harry Grosshandler, as transferees of the assets of Beaumart, for the deficiencies and additions to tax for fraud determined to be due from Beaumart for the calendar year 1942 and the taxable year January 1 to July 31, 1943. Each of the petitioners, against whom transferee liability has been asserted, in his petition contests the propriety of the deficiencies determined against Beaumart and alleges that the statute of limitations bars the assessment of any liability with respect to the deficiencies and additions to tax for fraud determined for the calendar year 1942. The burden was on the petitioners to prove that the respondent erred in his determination of the deficiencies against Beaumart. They introduced no evidence to sustain their burden. We must hold, therefore, that Beaumart was liable for the deficiencies determined against it for the calendar year 1942, and for the taxable *254 year January 1 to July 31, 1943. The burden was on the respondent to establish that the returns of Beaumart for the year 1942 and for the period January 1 to July 31, 1943, were false or fraudulent with intent to evade tax. The evidence adduced by respondent with respect to Samuel's individual fraud for these years establishes clearly that Beaumart, acting through its agent, Samuel, who was its treasurer and signed its corporate returns, filed false or fraudulent returns for these years for Beaumart with intent to evade tax. Since the returns of Beaumart were false or fraudulent with intent to evade tax, the statute (Section 311(b), Internal Revenue Code[6]) did not bar assessment against it or its transferees. Ruth Halle Rowen, 18 T.C. 874, 880; Section 276(a), Internal Revenue Code. Moreover, as to 1942, Samuel executed a waiver and the notice of deficiency was sent to him during the period as extended by the waiver; and as to 1943, the notices of deficiency to all the transferees were in any event mailed within the statutory period. Indeed none of the transferees has raised the question of limitations as to the year *255 1943.
As to the transferee liability, the burden was on the respondent to prove that Samuel, Alexander and Harry Grosshandler, and Max Bekowitz were liable in equity as transferees of Beaumart, and the extent of the liability of each. In order to sustain this burden he had to establish the amount of assets of Beaumart transferred to each petitioner without consideration, and to show that the transfers left Beaumart insolvent and unable to satisfy its tax liability. R. E. Burdick, 24 B.T.A. 1297, 1304. The respondent has shown that during the period March 12, 1943, to October 7, 1943, Samuel withdrew from Beaumart amounts aggregating at least $ 249,118.41; that these amounts were deposited in his personal account; and that on June 28, 1943, he repaid $ 15,000 to Beaumart. The net distributions *256 received by him from Beaumart during this period, therefore, amounted to at least $ 234,118.41. Respondent has also shown distributions by Beaumart in connection with its liquidation, in redemption of stock or otherwise without consideration, of $ 34,542.91 to Alexander Grosshandler, and of $ 2,060 to Max Berkowitz. As to Harry Grosshandler, the evidence shows not only that there was a distribution of $ 8,240 but also that Harry purchased fixed assets from Beaumart for $ 5,238.71 (the basis of these assets in the hands of Beaumart) which he had arranged to sell for $ 12,000. We are satisfied that these assets had a fair market value of not less than $ 12,000 at that time, and that therefore Harry was a transferee with respect to these assets in the amount of the difference between $ 12,000 and $ 5,238.71, namely, $ 6,761.29. Accordingly, Harry was a transferee to the extent of $ 8,240 plus $ 6,761.29, or $ 15,001.29. An examination of the balance sheet of Beaumart as of July 31, 1943, set forth in our findings, discloses that the above-mentioned distributions left Beaumart insolvent and unable to satisfy its tax liability for the year 1942 and for the taxable year January 1 to *257 July 31, 1943. Each of the petitioners in Dockets 16344, 16368, 16369, and 16372 is therefore liable as a transferee to the extent of the distributions received by each for the deficiencies and additions to tax determined against Beaumart plus interest as provided by law. Decisions will be entered under Rule 50. Footnotes
1a. Proceedings of the following petitioners are consolidated herewith: Estate of Samuel Grosshandler, Deceased, Clarice Neumann, Administratrix, Dkt. No. 16366 (substituted as petitioner by order of the Court in place of Samuel Grosshandler, who died after the petition was filed); Max Berkowitz, as Transferee of Beaumart, Incorporated, Dkt. No. 16368; Harry Grosshandler, as Transferee of Beaumart, Incorporated, Dkt. No. 16369; Estate of Samuel Grosshandler, deceased, as Transferee of Beaumart, Incorporated, Clarice Neumann, Administratrix, Dkt. No. 16372 (substituted as petitioner by order of the Court in place of Samuel Grosshandler, as Trustee of Beaumart, Incorporated).↩
2. Motion for leave to file an amendment to answer as amended to conform it to proof and to assert a claim for an increased liability, filed by the respondent on July 1, 1953, was granted September 1, 1953. Amendment to answer as amended was filed on September 1, 1953, asserting increased liability in the amount of $ 10,852.34.↩
3. There was no appearance on behalf of the petitioner in Docket No. 16366 and no evidence was offered to sustain the allegations that the respondent erred in adding to the decedent's income for the taxable years 1942 and 1943 the sums of $ 83,262.25 (referred to as $ 83,362.25 in the amended petition) and $ 95,063.59, respectively, as "other income"; and the allegation that the respondent erred in disallowing expenses in the amount of $ 2,355 for 1942. Also, in Docket No. 16366, no error was alleged as to the addition of $ 300 to 1943 income as "dividends" and the disallowance of medical expenses in the amount of $ 965.69 for that year. In the amended petition, petitioner alleges that the assessment of the deficiencies for the calendar years 1942 and 1943 is barred by the statute of limitations.↩
4. In their petitions, the petitioners in Dockets 16344, 16368, 16369 and 16372 allege that the assertion of liability against them as transferees of the assets of Beaumart, Incorporated, for the year 1942, is barred by the statute of limitations. There were no appearances on behalf of petitioners in Nos. 16372 and 16344. Petitioners in 16368 and 16369 each appeared pro se.↩
5. Beaumart's balance sheet as of December 31, 1942, shows liabilities (exclusive of capital stock) amounting to $ 114,771.95; par value of preferred stock outstanding $ 90,000; and par value of common stock outstanding $ 110,000.↩
6. SEC. 311. TRANSFERRED ASSETS. * * *
(b) Period of Limitation. - The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows: (1) In the case of the liability of an initial transferee of the property of the taxpayer, - within one year after the expiration of the period of limitation for assessment against the taxpayer;↩